Daniel C. Potts, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 13, 1979, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three.

*Franklin S. Van Antwerpen,* with him *Hemstreet and Van Antwerpen,* for appellant.

*William J. Kennedy,* Assistant Attorney General, with him *Richard Wagner,* Assistant Attorney General, Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, October 11, 1979:

This is the appeal of Daniel C. Potts from an order of the Unemployment Compensation Board of Review denying him benefits as a voluntary quit. Potts admits quitting but says that he did so for reasons of necessitous and compelling nature. *See* Section 402 (b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1). His asserted reasons were dissatisfaction with a reduction in wages and assertedly unsafe working conditions. The Unemployment Compensation Board of Review made the following pertinent findings:

> 1. The claimant was last employed by Penn American Products as a Shear Helper, at a final rate of $4.15 per hour and his last day of work was February 10, 1976.

2. The claimant had worked for the employer for about seventeen months in various capacities.

3. Prior to his transfer on his last day of work the claimant's most recent assignment was as a Lead Man in the Refrigeration Department at a final rate of $4.40 per hour.

4. The claimant had previously worked in the sheet metal department for 3 or 4 days although in a different capacity.

5. The claimant was transferred out of the Refrigeration Department due to lack of quarters, his complaints about alleged safety violations and his disagreements with the foreman in that department.

6. The claimant was the safety representative for his union.

7. The transfer to the Shear Helper position was proper under the terms of the union contract.

8. The claimant voluntarily terminated his employment as a Shear Helper after working at this position for about four hours because he felt working conditions were unsafe and also because he was dissatisfied with his reduced wages.

9. Prior to terminating his employment, the claimant asked for a transfer to other work and had complained to the foreman of the sheet metal section during his break.

10. At the time of the claimant's termination the employer had never been cited by the Occupational Safety and Health Administration (OSHA) for safety violations and no com-

plaints had ever been filed against said employer in this regard.

11. The employer made adequate provisions to insure safety on the job site.

12. An inspection by OSHA in September of 1976 revealed only minor safety violations.

Potts says that the Board of Review, which twice remanded the matter for additional hearings at his request, capriciously disregarded evidence of unsafe conditions at the shear where he was stationed for four hours on his last day on the job. Capricious disregard by a fact finder is willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. *Walsh v. Unemployment Compensation Board of Review*, 16 Pa. Commonwealth Ct. 155, 329 A.2d 523 (1974). Potts' testimony at the first hearing was to the effect that he was simply fearful of working at the shear. In the following hearings he attempted to prove that the conditions at the shear were dangerous and constituted violations of State and Federal safety regulations. At the third hearing he adduced the testimony of a person with engineering training who, *based entirely on Potts' description of the conditions at the shear,* asserted that safety violations existed at Potts' work place. The employer, however, adduced competent evidence that the conditions at the shear were not unsafe, that no safety violations existed, that no citations of violations had ever been issued and that Federal authorities had inspected its property and found no pertinent violations. A careful reading of the notes of the three hearings convinces us that the Board did not capriciously disregard evidence, that the evidence was conflicting, and that the Board made a perfectly appropriate choice of the evidence to be used as the

basis of its crucial findings unfavorable to Potts' claim.

Order affirmed.

ORDER

AND Now, this 11th day of October, 1979, the order of the Unemployment Compensation Board of Review is affirmed.