Northeastern Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Northeastern Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 19, 1981, before President Judge CRUMLISH and Judges WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Karl A. Fritton,* with him *Judith G. Eagle,* and *H. Thomas Felix, II, Obermayer, Rebmann, Maxwell & Hippel,* for petitioner.

*William J. Kennedy,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for repondent.

OPINION BY JUDGE MACPHAIL, January 29, 1982:

Northeastern Hospital (Employer) seeks review of two separate Unemployment Compensation Board (Board) decisions in this consolidated appeal. The Board found Nelson J. Jones (Claimant) entitled to

receive unemployment compensation benefits since he had not engaged in willful misconduct within the meaning of Section 402(e) of the Unemployment Compensation Law (Act) Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). The Board also rendered a decision denying the Employer relief from charges under Section 302(a)(1) of the Act, 43 P.S. §782(a)(1).[1]

Claimant was discharged as an assistant cook by Employer for failing to give proper notice of his absence from work. When he applied for unemployment

---

[1] Section 302(a)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §782(a)(1) provides in relevant part:

Such account shall be credited with all contributions paid by such employer for periods subsequent to June thirtieth, one thousand nine hundred forty-eight. Such account shall be charged with an amount determined by multiplying the wages of compensated employees of such employer for the twelve month period ended June thirtieth, one thousand nine hundred forty-nine, by the state experience heretofore used in determining rates of contributions for the year one thousand nine hundred forty-nine. Subsequent to June thirtieth, one thousand nine hundred forty-nine, such account shall be charged with all compensation, paid to each individual who received from such employer wage credits constituting the base of such compensation, in the proportion that such wage credits with such employer bears to the total wage credits received by such individual from all employers: Provided, That if the department finds that such individual was separated from his most recent work for such employer due to being discharged for willful misconduct connected with such work, or due to his leaving such work without good cause attributable to his employment, thereafter no compensation paid to such individual with respect to any week of unemployment occurring subsequent to such separation, which is based upon wages paid by such employer with respect to employment prior to such separation, shall be charged to such employer's account under the provisions of this sub-section. . . .

compensation benefits, the Bureau (now Office) of Employment Security found him eligible. The Employer appealed and the referee reversed the Bureau's determination and denied benefits. Due to faulty recording equipment which rendered the previous hearing transcript inadequate, a second hearing took place. The Board, after considering this new transcript, remanded the case a second time to establish additional testimony for the Board's consideration. On December 5, 1978, the Board issued its decision reversing the referee and granting benefits to the Claimant. It is with respect to this decision that the Employer files its appeal regarding eligibility.

Concerning the second decision on appeal here, the Bureau denied the Employer's application for relief from charges under Section 302(a) of the Act. Both the referee and the Board affirmed that denial. The Employer now seeks relief in this Court. We affirm both decisions.

Claimant last worked on February 4, 1977. Due to scheduled days off and vacation days, Claimant was next scheduled to work on February 10, 1977, on the 5:30 A.M. to 1:00 P.M. shift. The Claimant testified that he was unable to report for work due to illness. The Employer requires "double notice" from its employees when they are absent.[2] The testimony was conflicting as to the procedure to be followed in giving this "double notice." The Claimant testified the

[2] In its brief and at oral argument, the Board admitted that its fourth finding of fact that Claimant was unaware of the double notice rule, was in error. Nevertheless, the Board contends, and we agree, that the erroneous finding is not critical to its decision in this case because the Board also found from competent evidence that Claimant did make a reasonable effort to comply with the double notice requirement. Therefore, whether he knew of the rule or not is, in this case, irrelevant.

"double notice" policy requires that an employee call in once at his starting time to inform the Employer he will be absent and that *later* in the day the employee call the Food Director to inform him whether or not the employee will report to work the following day. The Employer, however, contended that the second notice to the Food Director had to be given by *noon* on the day the employee is absent. The Board[3] resolved this conflict in favor of the Claimant and found that no specific time was set to call the Food Director. All that was required was that he be called *later* in the day. On the day in question, Claimant notified his Employer at 5:30 A.M. that he was ill and would not be at work. During this phone conversation Claimant was told to call the Food Director later in the day pursuant to the "double notice" policy. Although Claimant called the Food Director twice, he spoke only with the secretary and was unable to get in touch with the Food Director personally. On February 11, 1977, when the Claimant reported for work, he was told he could not work until he spoke with the Food Director. Claimant waited until later that afternoon to contact the Food Director, but he had already left for the day. It was not until the Food Director's next scheduled work day, February 14, 1977, that Claimant spoke personally with the Director. It was at this meeting that Claimant was discharged due to his alleged repeated failure to comply with the Employer's "double notice" policy when he was absent from work.

---

[3] In unemployment compensation cases the Board is the ultimate factfinder. The Board must resolve questions of credibility and conflicts in the evidence. They must also determine the weight to be given to the evidence. *Peluso v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth.Ct. 250, 315 A.2d 340 (1974). Here the Board found the claimant's testimony to be more credible. Making this determination was a proper function of the Board, and we will not substitute our judgment for that of the Board.

The Employer contends that relevant findings of fact made by the referee are unsupported by substantial evidence and that the Claimant's repeated refusal to comply with the Employer's "double notice" policy, constituted willful misconduct. We disagree with both contentions.

The burden of proving willful misconduct so as to render a claimant ineligible for unemployment compensation benefits is on the employer. *Holomshek v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 503, 395 A.2d 708 (1979). In this case, the burden was on the Employer to prove that the Claimant's failure to speak directly with the Food Director to discuss his absence constituted willful misconduct. The question of whether the behavior for which a claimant is discharged constitutes willful misconduct is a question of law and subject to review by this Court. *Mancini v. Unemployment Compensation Board of Review,* 50 Pa. Commonwealth Ct. 266, 412 A.2d 702 (1980). Where, as here, the party with the burden of proof fails to prevail before the Board, our scope of review is limited to determining whether the findings of fact are consistent with each other and with the conclusions of law and whether they can be sustained without a capricious disregard of competent evidence. *Aluminum Co. of America v. Theis,* 11 Pa. Commonwealth Ct. 587, 590, 314 A.2d 893, 895 (1974). Capricious disregard has been defined to mean a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence would not possibly have disregarded in reaching a conclusion. *Potts v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 407, 410, 406 A.2d 585, 586 (1979).

Although we may have reached a different conclusion had we been the factfinder, absent a deliberate disregard of competent evidence, we must sustain the

Board's findings. It is well settled that excessive absences where justified and where properly reported according to the Employer's policy, while a legitimate basis for discharge, do not disqualify a claimant from receiving unemployment compensation benefits. *Penn Photomounts, Inc. v. Unemployment Compensation Board of Review,* 53 Pa. Commonwealth Ct. 407, 417 A.2d 1311 (1980). Evidence in the record supports the Board's findings that Claimant properly reported his absence. As we have noted, the Claimant reported off in the morning due to illness and then attempted twice to reach the Food Director later in the day but was unable to reach him personally. This is consistent with the Board's conclusion that the "double notice" policy of the Employer required only that an employee call in once at his starting time to give notice of his absence and once *later* in the day to inform the Food Director whether he would be in the following day. The Claimant did try to speak with the Food Director. It is an established principle that when an employee can show that his actions were justifiable or reasonable under the circumstances, he may not be charged with willful misconduct. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976). We are unable to say as a matter of law that the Board erred when it concluded that Claimant's actions here were reasonable under the facts as the Board found them to exist.

Regarding the second decision on appeal in this action, that is the Employer's application for relief under Section 302(a)(1) of the Act, we find that the Board acted properly in affirming the denial of relief from charges. By the language of the statute the Employer is only entitled to relief if the employee was discharged for willful misconduct or leaving work without good cause. Neither of those two conditions was met here. Therefore, the Employer having failed

to bring itself within the provisions of the statute, the Board was compelled to deny the Employer's request for relief from charges.

Orders affirmed.

**ORDER**

AND Now, this 29th day of January, 1982, the Orders of the Unemployment Compensation Board of Review dated December 5, 1978 (No. B-166612) and December 27, 1978 (No. B-167455) are affirmed.

Judge PALLADINO did not participate in the decision in this case.