528 A.2d 264

Francis J. Fleeger, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 23, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Frank J. Piatek,* for petitioner.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, June 24, 1987:

Francis J. Fleeger (Claimant) appeals an order of the Unemployment Compensation Board of Review (Board) affirming a referee's determination that he is ineligible for benefits under Section 402(b) of the Unemployment Compensation Law.[1]

Claimant voluntarily terminated his employment as a truck driver with J. B. Hunt Transport Company (Employer) on August 17, 1985. Claimant alleges that during the six months he worked for the Employer he was required to drive excessive hours in violation of Federal Motor Carrier Safety Regulations of the U. S. Department of Transportation.[2]

The Board found that Claimant had complained to his dispatcher that he was being required to drive excessive hours and was instructed that all deliveries were

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* (Act) 43 P.S. §802(b).

[2] 49 C.F.R. §§350.1-399.211 (1986) (federal safety regulations).

to be made on time, regardless of the number of hours required. Claimant testified that he complained to three (3) different dispatchers and also informed a supervisor that he was expected to violate federal safety regulations.[3] Claimant voluntarily left his employment as a direct result of the alleged violations.

There were a total of three (3) hearings before the referee. At the initial hearing on October 2, 1985, Claimant testified but the Employer, who is located out of state, did not appear.[4] The referee decided to continue the matter to receive the Employer's testimony and a teleconference hearing was held on October 21, 1985. On that date, the referee noted she had neglected to forward the Claimant's exhibits to the Employer. At the request of the Employer, the referee agreed to continue the hearing until November 5, 1985, at which time the Employer's terminal manager testified. The referee determined that Claimant's voluntary quit was not for cause of a necessitous and compelling nature and the Board affirmed, adopting the referee's findings of fact.

Claimant contends on appeal that it was an abuse of discretion for the referee to reschedule a second hearing to permit the Employer to testify,[5] the Board erred in concluding that he did not have a necessitous and compelling reason to quit, and the Board failed to make necessary findings of fact.

---

[3] Notes of Testimony from Referee's Hearing on October 2, 1985 (N.T.) at 8; Notes of Testimony from Referee's Hearing on November 5, 1985 (N.T. II at 8-9).

[4] Although there is no indication in the record as to whether the Employer actually received notice of the original hearing, the Notice of Hearing for October 2, 1985, was not sent to the Employer's correct post office box.

[5] Claimant incorrectly argues that the referee *reopened* the hearing pursuant to 34 Pa. Code §101.24. A review of the record reveals that the matter was *continued* pursuant to 34 Pa. Code §101.23.

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or any necessary findings of fact are not supported by substantial evidence. *Pacini v. Unemployment Compensation Board of Review*, 102 Pa. Commonwealth Ct. 355, 518 A.2d 606 (1986).

With regard to the issue of whether it was an abuse of discretion for the referee to continue the hearing to permit the Employer to testify, the record reveals that Claimant failed to object to the continuance before the referee and neglected to raise the matter before the Board. Therefore, pursuant to Pa. R.A.P. 1551(a), the issue is not properly before this Court. *Gillooly v. Unemployment Compensation Board of Review*, 76 Pa. Commonwealth Ct. 20, 462 A.2d 958 (1983).

We now turn to Claimant's next contention that the Board failed to make necessary findings of fact and erred in determining that he did not have a necessitous and compelling reason to quit. Claimant testified that he was required to drive excessive hours in violation of federal safety regulations. Claimant testified that he drove a 5-axle wing truck in excess of 70,000 pounds, carrying dry freight in interstate commerce for various customers of the Employer.[6] He further testified that the Employer was subject to the federal safety regulations and that he maintained a copy of these regulations.[7]

Claimant expressed his reasons for terminating his employment as follows:

A. I was operating a piece of equipment for J. B. Hunt in excess of 70,000 lbs. on Interstate principal highways. This company had no regard

---

[6] N.T. at 1-2, 8; N.T. II at 7.

[7] N.T. at 2.

for my safety. I was expected to be on duty 24 hours between driving, supervising loading and unloading or physically loading or unloading freight myself. On several occasions I found myself driving in a state of total exhaustion. I spoke to dispatch on several occasions about this problem. The only importance to them was getting their freight home, with no regard to my safety. After putting up with these circumstances for 6 months, because I needed the employment, I physically could not do this any longer. I was afraid I was jeopardizing not only my life, but the lives of others, and for that reason, I was forced into resignation.

. . . .

A.  . . . . I was dispatched on runs without securing the proper rest time and time again. On several occasions I was caught out on the Interstate between safety points, just having to pull over to the shoulder of the highway, because I couldn't go any further.

Q.  Did you almost have an accident?

A.  I had several close shaves. I'd catch myself falling asleep. I'd physically slap myself in the face, do whatever it took to try to maintain my consciousness.[8]

The federal safety regulations provide in pertinent part that:

[N]o motor carrier shall permit or require any driver used by it to drive nor shall any such driver drive:

(1)  More than 10 hours following 8 consecutive hours off duty; or

---

[8] N.T. at 3.

(2)  For any period after having been on duty 15 hours following 8 consecutive hours off duty.

49 C.F.R. §395.3(a)(1) and (2).[9]

Drivers using sleeper berth equipment may accumulate the eight consecutive hours off duty in two separate periods, as long as neither period is less than two hours. 49 C.F.R. §395.3(a)(3). The regulations further provide that carriers shall not permit or require any driver to be on duty more than sixty (60) hours in seven (7) consecutive days. If the carrier operates every day of the week, it may require the driver to be on duty a maximum of seventy (70) hours in eight (8) consecutive days. 49 C.F.R. §395.3(b). A motor carrier includes "a common carrier by motor vehicle, a contract carrier by motor vehicle, and a private carrier of property by motor vehicle." 49 C.F.R. §390.15

The Board's finding that Claimant was employed as a truck driver for the Employer supports a conclusion that the Employer is a motor carrier subject to the federal safety regulations.

Claimant testified that the Employer required him to drive in excess of ten (10) hours after eight (8) consecutive hours off duty and, that he had driven "at least" eighty (80) hours in eight (8) consecutive days.[10] Claimant further testified that his dispatcher instructed him to alter his log book on runs that would require him to exceed the maximum driving time pemitted under the federal safety regulations.[11]

Claimant documented a 645 mile trip he had made for the Employer on March 14, 1985, from Lowell, Ar-

---

[9] There are enumerated exceptions to this regulation which are not applicable.

[10] N.T. at 8.

[11] N.T. II at 9-10.

kansas, to Minneapolis, Minnesota. Claimant also submitted the bill of lading for the load he had transported on that trip, which had a notation that the delivery was "hot." Claimant testified that this meant that the load was late and had to be delivered as quickly as possible, even if it required driving for more than ten hours in one day.[12] Obviously, traveling 645 miles at the maximum legal speed of fifty-five miles per hour would require driving time alone of almost twelve hours.[13] Further, Claimant was reprimanded for failing to make an 807 mile trip in twenty-one and one-half (21½) hours, even though at the hearing, the Employer's terminal manager admitted that the trip required Claimant to go too far in such a short time.[14]

Claimant bears the burden of proving that his voluntary termination was for cause of a necessitous and compelling nature. *Kligge v. Unemployment Compensation Board of Review*, 89 Pa. Commonwealth Ct. 30, 491 A.2d 325 (1985). We have held that an employee has good cause for leaving his employment where the job jeopardizes his health or safety or where the work which is required results in a breach of law. *Stormer v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 220, 378 A.2d 1037 (1977). If the Board found Claimant's testimony credible regarding the aforementioned violations, Claimant would have shown good cause for terminating his employment. Re-

---

[12] N.T. at 6-7.

[13] Claimant documented a 766 mile trip from Middleport, New York, to Indianapolis, Indiana. Claimant stated he left Middleport on July 1, 1985, and arrived in Indianapolis on July 2, 1985; however, the record does not reveal the times of departure or arrival. Therefore, the Board cannot determine whether he drove in excess of ten (10) hours, as he may have been able to use a sleeper berth during the trip.

[14] N.T. II at 10.

quiring an employee to violate federal safety regulations would not only require a breach of legal duty on the part of the employee, but would automatically supply the employee with legitimate safety concerns that would justify leaving such employment.

In affirming the denial of eligibility, the Board found it is the employee's responsibility to notify the employer when he is "out of hours." This finding was based on the testimony of the terminal manager who also stated that the Employer does not know the employee's work schedule and depends on the employee to keep track of his hours. The federal safety regulations provide that it is the motor carrier's duty to require their drivers to observe the maximum hours they may drive. 49 C.F.R. §390.32. Further, the Employer would have to realize that assigning Claimant a 645 mile delivery of a "hot" load would require him to violate the federal safety regulations.

The Board also found that Claimant failed to notify the terminal manager that he was required to drive excessive hours in violation of federal safety regulations. A review of the record reveals that Claimant was originally stationed at the Employer's terminal in Lowell, Arkansas. Claimant testified that he complained to his dispatcher at the Lowell terminal of having to drive excessive hours in violation of federal safety regulations, but the dispatcher was only concerned with ensuring that the freight was delivered on time and did not address Claimant's safety concerns.[15] Claimant next reported his concerns to Nick Hobb, a superior, who he understood to be the individual who was "the next step up the ladder" from the dispatcher.[16] At this time, Claimant was transferred to the Employer's Springfield, Ohio, termi-

---

[15] N.T. at 8.

[16] N.T. at 9; N.T. II at 8.

nal where his two (2) dispatchers required that he drive excessive hours. Claimant again spoke to his superior, Nick Hobb, who also transferred to the Springfield terminal, regarding the situation. Obviously, the situation was not resolved and Claimant quit.

We fail to see why Claimant should be required to report his safety concerns to the terminal manager. The employer had no rule or policy concerning the reporting of safety concerns. The terminal manager testified that when and if the employee reaches the maximum allowable hours under the federal safety regulations, "[t]hey should report it to *someone*."[17] (emphasis supplied). Claimant complained to his dispatchers and then to the superior he understood to be next in the chain of command. Claimant's testimony demonstrates a reasonable attempt on his part to effectuate the Employer's compliance with the federal safety regulations; and, therefore, if violations were occurring, his voluntary quit was consistent with ordinary common sense and prudence.

"[T]he Board's findings of fact must include all findings which are necessary to resolve the issues raised by the evidence and which are relevant to a decision." *Cicco v. Unemployment Compensation Board of Review,* 61 Pa. Commonwealth Ct. 309, 313, 432 A.2d 1162, 1164 (1981). Although the Board found that Claimant informed his dispatcher of the alleged violations, it does not specify which dispatcher and makes no finding as to whether or not he in fact further complained to Nick Hobb. Further, the Board failed to make any findings of fact on which to base a conclusion as to whether or not Claimant was required to violate the federal safety regulations during the course of his employment. On the record before us, we would prefer to decide this

---

[17] N.T. II at 4.

matter by reversing the Board. However, where the Board has failed to address "factual issues which may be legally determinative of a claimant's eligibility for unemployment compensation benefits," we are unable to properly perform our function of appellate review and must remand to the Board to make the necessary findings. *Levan v. Unemployment Compensation Board of Review,* 91 Pa. Commonwealth Ct. 507, 512, 498 A.2d 987, 989 (1985).

Accordingly, we must remand this matter to the Board to make the necessary findings as set forth herein.

### ORDER

AND NOW, this 24th day of June, 1987, the order of the Unemployment Compensation Board of Review at No. B-248707 is vacated and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

Judge PALLADINO dissents.