**UNCLAIMED FREIGHT COMPANY,**
Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 17, 1996.

Decided June 6, 1996.

**378**

Steven R. Blair, for Petitioner.

Joanne Betlem Kehr, for Intervenor, Philip E. Kehr.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

SMITH, Judge.

Unclaimed Freight Company (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) that reversed the referee's decision and granted unemployment compensation benefits to Philip E. Kehr (Claimant) after determining that he was not ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] Section 402(b) disqualifies a claimant whose unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. The issue presented is whether the Board's determination that Claimant quit his job for cause of a necessitous and compelling nature is in accordance with the applicable case law and is supported by substantial evidence.

I.

Claimant worked for Employer as an advertising manager for over eight years until his last day of work on January 20, 1995. Following his resignation, Claimant filed for unemployment benefits at the local job center, which denied benefits under Section 402(b) after determining that Claimant did not establish cause of a necessitous and compelling nature to leave his job. Claimant appealed contending that his termination was due to Employer's verbal abuses and to health-related reasons.

At the referee's hearing, Claimant testified that Ronald J. Kettner, the owner, would often castigate Claimant in front of other employees for failing to follow directions. While addressing Claimant, Kettner constantly and repeatedly used particularly offensive profanity. Claimant also presented the testimony of Rebecca Neely, a former office manager, who corroborated Claimant's testimony regarding Kettner's verbal abuse; she further testified that Claimant's headaches were common knowledge at the office. Employer presented the testimony of Emil Nettke, its general manager, who testified that when he asked Claimant why he was quitting, Claimant responded that he had just moved and wanted time to unpack boxes, clean the house and, after that, he was going to do filing work at his wife's law office.

Claimant admitted before the referee that when he gave his notice to Employer, Nettke asked Claimant why he was leaving and Claimant stated that he had moved into another house and had to unpack some boxes in the basement and thereafter would help his wife, an attorney, do filing work in her law office. When Nettke asked Claimant if there was any other reason, he said no. When Nettke asked if Claimant wanted to work part-time, Claimant said he would consider it but that he wanted $15 per hour.

The referee affirmed the job center's denial of benefits after finding that Claimant informed Employer that he was quitting because he needed more time to unpack boxes in his new home and that he was planning to do filing work for his wife in her law office after unpacking boxes. The referee further found that Claimant never informed Employer that he was resigning due to health-related reasons and that Claimant never provided Employer with any medical restrictions imposed upon Claimant by a medical practitioner.

The Board reversed the referee, making the following findings of fact. Claimant resigned due to continual verbal abuse directed toward him by the owner, and this abuse caused Claimant to have recurring migraine headaches and to take large doses of barbiturates. Claimant's doctor recommended that he decrease the amount of drugs he ingested due to possible liver damage. Although Claimant complained to Kettner, the owner, and Nettke, the general manager, regarding

---

Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

Kettner's verbal abuse, it continued. Employer did not ask Claimant why he was resigning but only what he now would be doing. Employer was aware of Claimant's headaches. Based on these findings the Board determined that Claimant had necessitous and compelling cause for terminating his employment.

Employer appealed to this Court asserting that a fair reading of the record shows that the Board's decision is not supported by substantial evidence and that Claimant has failed to meet the conditions required to establish cause of a necessitous and compelling nature under the applicable case law.[2] Employer contends that the clear and uncontradicted evidence of record demonstrates that at the time of his separation Claimant gave Employer only personal reasons for his decision to quit. Employer further contends that even assuming *arguendo* that Claimant quit because of health problems stemming from Kettner's allegedly abusive behavior toward him, Claimant should be denied benefits under Section 402(b) because he did not complain to Employer about abusive behavior toward him; he did not fully apprise Employer of his health problems; he failed to advise Employer about any specific medical limitations on his employment; and he failed to make a request for a transfer to a more suitable position.

## II.

In regard to Claimant's allegations of abusive behavior, this Court has held that in cases involving unjust accusations or abusive behavior a claimant must, prior to leaving, notify his or her supervisor or management of the claimant's dissatisfaction. *Moskovitz v. Unemployment Compensation Board of Review,* 160 Pa.Cmwlth. 618, 635 A.2d 723 (1993). In that case, a chef resigned without giving any reasons to his employer. Before a referee, however, the claimant testified that he had been subject to abusive conduct. The Court in *Moskovitz* upheld the Board's denial of benefits on the basis that "Claimant had a

responsibility under the Law to notify Employer of the conduct *before* voluntarily quitting." *Id.,* 160 Pa.Cmwlth. 618, 635 A.2d at 724 (emphasis in original).

Claimant contends, to the contrary, that he did not have a duty to notify Employer at the time of his termination that Kettner's abusive behavior was the reason for his decision to terminate his employment. To support his position Claimant cites *Homan v. Unemployment Compensation Board of Review,* 107 Pa.Cmwlth. 172, 527 A.2d 1109 (1987), and *Tedesco Mfg. Co., Inc. v. Unemployment Compensation Board of Review,* 122 Pa. Cmwlth. 549, 552 A.2d 754 (1989), two cases involving sexual harassment of female employees by other employees. In those cases, the Court stated that the claimants need not notify the employer of each and every incident of harassment and that the claimants would not be ineligible for benefits so long as they had taken "common sense" action that would have given the employer an opportunity to understand the nature of their objections and to take prudent steps to resolve the problem.

This Court also recognizes that in *Danner v. Unemployment Compensation Board of Review,* 66 Pa.Cmwlth. 252, 443 A.2d 1211 (1982), the Court reversed a decision of the Board that denied the claimant benefits on the ground that he did not notify his supervisor of harassment and taunting by other employees and, on occasion, by the supervisor. The Court in *Danner* reasoned that in light of the circumstances in that particular case, where the harassment was peculiarly virulent and embarrassing, the supervisor had a duty to step in and remedy the situation. However, *Homan, Tedesco Mfg. Co., Inc.* and *Danner* are clearly distinguishable from the present situation for the reason that here Claimant specifically admitted that he told Nettke, Employer's general manager, that he was leaving for personal reasons unrelated to Kettner's behavior. Nettke was unaware that Claimant, who had tolerated Kettner for eight years, could no longer work because of Kettner's behavior, and, in fact,

the claimant's constitutional rights have been violated. *Chamoun v. Unemployment Compensation Board of Review,* 116 Pa.Cmwlth. 499, 542 A.2d 207 (1988).

they discussed Claimant's continued employment on a part-time basis. Claimant's unwillingness to discuss Kettner's abusive behavior at the time of Claimant's termination therefore unjustly deprived Employer of an opportunity to preserve Claimant's employment.[3]

Furthermore, in *Van Duser v. Unemployment Compensation Board of Review*, 164 Pa.Cmwlth. 96, 642 A.2d 544 (1994), this Court stated that to establish health as a compelling reason for quitting a job a claimant must:

> (1) offer competent testimony that adequate health reasons existed to justify termination at the time of termination; (2) have informed the employer of the health problem; and (3) have made to the employer a specific request for a transfer to a more suitable position. *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977). A claimant's failure to meet any one of these conditions will bar a claim for unemployment compensation benefits.

*Id.*, 642 A.2d at 550. In the present case, at the time of his termination from employment, Claimant did not inform Employer that he was quitting for health reasons and did not request a more suitable position. A review of the record establishes that Claimant never provided Employer with notice of any medical limitations imposed by Claimant's physician. As a result, Employer was unaware that Claimant's health was the true reason he terminated his employment, and, therefore, Employer was deprived of an opportunity to take any action to retain Claimant in its employ.

In summary, although the Board found that Claimant had in the past complained of Kettner's verbal abuse, Claimant did not inform either Kettner or Nettke that Kettner's verbal abuse was the reason for Claimant's termination of his employment. Instead, Claimant informed Nettke that he was leaving to unpack boxes and to help his wife do filing work in her office, and when pressed by Nettke Claimant responded that there was no other reason for his decision to terminate his employment.[4] In view of these circumstances, this Court holds that the Board erred in determining that Claimant's voluntary separation was for cause of a necessitous and compelling nature. Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, this 6th day of June, 1996, the order of the Unemployment Compensation Board of Review is hereby reversed.

COLINS, President Judge, dissents.

FRIEDMAN, Judge, dissenting.

I must respectfully dissent. Unlike the majority, I do not believe that Pennsylvania law requires Philip E. Kehr (Claimant), prior to quitting, to re-notify Unclaimed Freight Company (Employer) about Ronald J. Kettner's verbal abuse and profanity over an eight year period. Indeed, I believe that Claimant's many complaints about Kettner's verbal abuse and profanity over the course of that time, made both to Kettner, the owner of the company, and to Emil Nettke, Employer's general manager, afforded Employer numerous opportunities to correct the problem and thereby preserve Claimant's employment.

There is no question here that Claimant quit his job with Employer because: (1) Kettner subjected Claimant to continual verbal abuse and profanity over an eight year period; (2) Claimant often complained, but Kettner did not modify his behavior; (3) the abuse caused Claimant to have recurring migraine headaches, for which he took large doses of barbiturates; and (4) Claimant's doctor advised him that the large doses would damage his liver. (UCBR's Findings of Fact, Nos. 1–4, 6.)

---

**3.** Although Claimant alleges other grounds for quitting his job, including a reduction in salary and alteration of job duties, the Board made no findings of fact and reached no conclusions of law in regard to those claims.

**4.** As a result, the Board's Finding of Fact No. 5, that Employer did not ask Claimant why he was resigning, is unsupported by, and is in fact contrary to, the evidence of record.

Nevertheless, because Claimant, afraid of yet another confrontation with Employer when asked his reasons for quitting, (R.R. at 10a), chose to tell Nettke that he was leaving work for personal reasons, the majority concludes that Claimant failed to give Employer an opportunity to preserve Claimant's employment. (*Majority op.* at 379.) I cannot agree.

Where a claimant tells an employer about harassment, abuse, humiliation and degradation in the workplace and asks the employer to remedy the situation, but the employer fails to do so, this court has not required a claimant who continues to work under such conditions to re-notify the employer about the abuse prior to quitting. *Danner v. Unemployment Compensation Board of Review*, 66 Pa.Cmwlth. 252, 443 A.2d 1211 (1982). We have stated that an employee who has been subjected to harassment need not notify the employer of each and every incident and will be eligible for benefits so long as the claimant took "common sense" action that would give the employer an opportunity to understand the nature of the employee's objection and to take prudent steps to resolve the problem. *Tedesco Manufacturing Co. v. Unemployment Compensation Board of Review*, 122 Pa.Cmwlth. 549, 552 A.2d 754 (1989); *Homan v. Unemployment Compensation Board of Review*, 107 Pa.Cmwlth. 172, 527 A.2d 1109 (1987). Here, Employer clearly understood from Claimant's complaints that Claimant objected to Kettner's verbal abuse and profanity. In spite of many opportunities over an eight year period to resolve the problem, Employer did nothing.

The majority distinguishes this line of cases from the situation before us here by concluding that, unlike those claimants, Claimant here deprived Employer of a chance to retain Claimant in its employ by giving Employer personal reasons for quitting. (*Majority op.* at 379.) However, Claimant gave Employer many opportunities over an eight year period to preserve Claimant's employment; the response was always the same, i.e., no improvement. Unlike the majority, I believe that Claimant did all that was necessary; I would force Claimant to do no more.

The fact that Claimant gave personal reasons for quitting is mere surplusage. After eight years of humiliation, recurring migraine headaches and, finally, the threat of liver damage from his headache medication, I believe that Claimant was entitled to preserve his dignity by giving personal reasons for quitting. Indeed, there was no need for Claimant to tell Employer that his abuser, the owner of the company, had so destroyed his mental and physical well-being that he could no longer take it.

Because I believe that Claimant gave Employer many opportunities to correct his verbal abuse and profanity, I would affirm the UCBR's award of benefits.