**GREEN TREE SCHOOL, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 12, 2009.

Decided Oct. 19, 2009.

Terri Gillespie, Philadelphia, for petitioner.

David L. Deratzian, Bethlehem, for intervenor, Sherril G. Newmark.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Green Tree School (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board), granting benefits to Sherril Newmark (Claimant). The Board affirmed the Referee's finding that Claimant had a necessitous and compelling reason for volun-

---

1. The case was reassigned to this author on August 31, 2009.

tarily leaving her position. In this case, we consider whether Claimant's stated safety concerns and Employer's refusal to allow her to participate in a staffing decision gave her necessitous and compelling reasons to resign. Concluding that they did not, we reverse the Board.

Employer is a private school for children with autism and emotional disturbances, where Claimant worked for seven years as the Director of Education. By letter of May 9, 2008, Claimant informed the school's Board of Directors that its "decision to cut the position of Behavior Coordinator for the coming year . . . has resulted in my resignation." Amended Reproduced Record (A.R.R.——) at 17a. The Board of Directors accepted Claimant's resignation effective May 30, 2008, and Claimant applied for unemployment benefits.

The UC Service Center denied Claimant benefits under Section 402(b) of the Unemployment Compensation Law (Law),[2] finding that Claimant had voluntarily quit work without a necessitous and compelling reason. Claimant appealed, and a hearing was held before a Referee.

At the hearing, Claimant testified that in November 2001, Employer began interviewing for a "behavior management coordinator," a position Claimant helped to create. Trish Treskot, Claimant's life partner, was hired to fill the position. Claimant had informed Employer of her relationship with Treskot before the hiring decision was made.

Claimant testified that staff members made unfounded allegations about Treskot to Dr. Herman Axelrod, who was in charge of the school and was Claimant's supervisor. Sometime thereafter, Dr. Axelrod advised Claimant that Treskot's position had to be eliminated so the school could hire a music therapist and a computer teacher. Claimant asked the Board of Directors to reconsider the elimination of Treskot's position in her above-referenced letter of May 9, 2008,[3] and to that end requested a meeting with the directors. Her letter stated that eliminating Treskot's position "endangers the physical and emotional safety of every child and every staff on campus." A.R.R. 17a. Claimant's letter also warned that the Board of Directors' "clear discrimination against those choosing non-heterosexual lifestyles cannot be ignored." A.R.R. 18a. Claimant testified that the elimination of Treskot's position was the first time in her seven years as Education Director that she was not consulted about a staffing decision of this type.

Claimant testified that she intended to resign at the end of the school year if the Board of Directors did not reconsider, explaining that she had not intended her letter of May 9, 2008, to convey a resignation. Claimant also stated that she had informed Dr. Axelrod several times that she would never leave before the end of a school year. Claimant noted that on May 16, 2008, Dr. Axelrod sent her an email asking her to reconsider her intention to resign.

Claimant explained that on May 30, 2008, she and Treskot were summoned to a meeting with Dr. Axelrod and the Chairman of the Board. At that meeting, she

---

**2.** Section 402(b) of the Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). It states, in relevant part, as follows:

> An employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

**3.** John Madden, a school employee supervised by Claimant, also wrote a letter to the Board of Directors questioning the Board's decision to eliminate Treskot's position.

was informed that the Board of Directors had decided not to reconsider its decision to eliminate Treskot's position and to accept Claimant's resignation. Four days later, on June 3, 2008, Dr. Axelrod announced that the position of behavior coordinator was being replaced by a behavior analyst position, which required credentials that Treskot did not have.

Claimant testified that she resigned because of her inability to assure the safety of the students and the staff. She stated that had she known that Treskot's position would be replaced by a behavior analyst, her safety concerns would have been alleviated. Finally, Claimant asserted that a letter she received from Employer after the May 30, 2008, meeting was a form letter sent exclusively to persons whose employment was terminated and not to those who resigned.

Employer presented the testimony of Judith Jones Blanks, Employer's Human Resources Director. Blanks testified that Claimant emailed her May 9, 2008, letter of resignation to all the members of the Board of Directors. Blanks explained that in response the Board held an emergency meeting on May 21, 2008. The Board decided not to revisit the decision to eliminate Treskot's position, thereby accepting Claimant's resignation of May 9, 2008. Blanks testified that Dr. Axelrod did not include Claimant in the decision to eliminate Treskot's position for the simple reason that Claimant was personally close to the matter.

Employer also presented the testimony of Jonathan Thompson, a Behavior Management Specialist who has worked for Employer for approximately eleven years. Thompson testified that Treskot's duties were the same as those of the other five employees in the Behavioral Department, but with additional administrative responsibilities. He stated that the department

had dealt adequately with safety issues before the addition of the behavior coordinator and experienced no difficulties after its elimination. Thompson acknowledged that the behavior coordinator position was created as a result of "critical incidents," but he explained that the department had been able to handle them. A.R.R. 55a.

Finally, Employer presented Dr. Axelrod, who testified that he made the decision to eliminate the behavior coordinator position in late April or early May and communicated that decision to Claimant at a regular weekly meeting. When Claimant learned this, she told Dr. Axelrod that she was resigning. He also testified that the Board of Directors believed that Claimant had resigned in her May 9, 2008, letter. Dr. Axelrod acknowledged that Claimant had told him prior to sending the letter that she would not leave before the end of a school year.

Dr. Axelrod explained that May 30, 2008, was chosen as Claimant's last day of work because the school administration "felt that a Friday afternoon would [cause] the least amount of disruption to the staff and students." A.R.R. 60a. The letter sent to Claimant was the one sent to all staff leaving employment, whether by discharge or resignation. Treskot's position was eliminated because "the coordination and communication between the departments [was] in chaos." A.R.R. 63a.

Dr. Axelrod explained that he had not told Claimant about the creation of the new position because the money for the position had not yet been allocated. In any case, the duties of the behavior analyst overlapped with those of the behavior coordinator only to a minor extent.

The Referee found that Claimant had voluntarily resigned her position because of the elimination of the behavior coordinator position, which the Referee found to be

a necessitous and compelling reason. The Referee found that Claimant sincerely believed that having the position staffed was vital to safety in the school. The Referee reasoned that Employer must have agreed or else it would not have created the behavior analyst position.

Employer appealed to the Board. The Board found that Claimant's "safety concerns regarding the elimination of the position were real." A.R.R. 92a. The Board concluded that Claimant made a good faith effort to address her concerns to the Board of Directors, and the Board of Directors' refusal to discuss the matter with her also gave her a necessitous and compelling reason to resign. Employer appealed to this Court.

On appeal,[4] Employer contends that the Board erred in determining that Claimant had necessitous and compelling reasons for resigning. Specifically, Employer contends that Claimant's concerns regarding the "physical and emotional safety" of the persons at the school was speculative and, further, Claimant did not take reasonable steps to preserve her employment. We agree.

■ Claimant has the burden of establishing that necessitous and compelling reasons existed for quitting her employment. *Empire Intimates v. Unemployment Compensation Board of Review*, 655 A.2d 662, 664 (Pa.Cmwlth.1995). Claimant must establish that she acted with ordinary common sense in quitting her job, that she made a reasonable effort to preserve her employment, and that she had no other real choice than to leave her employment. *Id.*

Claimant contends that Employer's decision to reduce the behavior management staff from six to five created an unsafe environment at the school. She further claimed that the Board of Directors should have consulted with her about its decision to eliminate the position. Finally, Claimant alleged that Employer's decision to cut Treskot's position was discriminatory, homophobic, or both.

The Board did not find that Claimant was the victim of discrimination,[5] and the Board did *not* find, as fact, that the loss of Treskot made the school unsafe. In the discussion portion of its adjudication, the Board explained that Claimant's safety concerns were "real" and that the school management's refusal to include her in the decision-making on how to staff the Behavior Department gave her a necessitous and compelling reason to resign. The Board's legal discussion on this point misapprehends precedent.

■ An unsafe work environment can give an employee a necessitous and compelling reason to resign. In *Fleeger v. Unemployment Compensation Board of Review*, 107 Pa.Cmwlth. 84, 528 A.2d 264 (1987), the claimant truck driver was found to have a necessitous reason to quit because he had been assigned driving hours that exceeded those allowed under federal safety regulations. Likewise, in *Rapid Pallet v. Unemployment Compensation Board of Review*, 707 A.2d 636 (Pa. Cmwlth.1998), the claimant, again a truck driver, was found to have a necessitous reason to quit because his truck's brakes were faulty and its tires bald, which the

---

4. This Court's scope of review in an unemployment compensation case is limited to determining whether constitutional rights were violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence.

*Blue v. Unemployment Compensation Board of Review*, 150 Pa.Cmwlth. 542, 616 A.2d 84, 86 n. 4 (1992).

5. Notably, Employer knew of Treskot's relationship with Claimant when it hired Treskot.

employer refused to fix. In each of these cases, the claimant demonstrated by objective evidence that his working conditions were unsafe and placed the employee at risk. On the other hand, safety "fears" alone do not constitute a compelling reason to resign. In *Potts v. Unemployment Compensation Board of Review*, 46 Pa. Cmwlth. 407, 406 A.2d 585, 586 (1979), this Court denied benefits to a claimant who was "simply fearful" but unable to prove the workplace was dangerous.

■■■ In this case, Claimant did not testify that she was personally in danger, and her claim in this regard was not supported by other employees of the school, none of whom quit when Treskot's position was eliminated. Given Claimant's position in school administration, as opposed to being in the classroom, it is unlikely that unruly students would place her at risk. Students and teachers might be at risk from unruly students, but a claimant cannot base a decision to quit on the putative danger of other employees. There is simply a disconnect between the harm posited by Claimant and her personal safety.

The Board's statement that Claimant's safety concerns were "real" demonstrated a misunderstanding of our jurisprudence in this area of law. In *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977), a claimant was found to have a necessitous reason to quit after being subjected to racial slurs from his employer, co-workers and customers over a period of several years.

The claimant demonstrated numerous instances of verbal abuse through his own testimony and that of other employees. The Supreme Court found that this outside "pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances" made his resignation voluntary. *Id.* at 359, 378 A.2d at 833. *Taylor* is inapposite for several reasons.

First, Claimant did not demonstrate the kind of direct pressure demonstrated by the claimant in *Taylor*. Second, the Board misapprehends the reference to "real" as used in *Taylor*. The test is not whether a claimant's belief is a genuine one. Rather, the test is whether the claimant has demonstrated that the workplace environment has placed "real," *i.e.*, actual and extreme, pressure on the claimant. Third, Claimant's self-serving testimony did not demonstrate that she was unsafe or that the workplace was unsafe with the kind of objective evidence presented in *Fleeger* or *Rapid Pallet*.[6]

Likewise, the Board erred in concluding that Claimant had a right to be involved in the decision of whether to eliminate Treskot's position. Claimant had no right to make this demand. Employees do not enjoy a general right to participate in management decisions, such as how many staff are needed in another department. In addition, Dr. Axelrod explained that Claimant should not have been involved in this particular personnel decision precisely because of her relationship with Treskot.[7]

---

6. The dissent claims that Claimant's "self-serving" testimony was accepted by the Board and that the Board's findings of fact are conclusive on appeal. The dissent fails to recognize, however, that the Board did not find, as fact, that the school was unsafe or that the workplace placed actual and extreme pressure on Claimant that compelled her to quit. The Board merely found Claimant's belief to be "real," *i.e.*, genuine. This is not the

test established in *Taylor*. Claimant's sincerely held belief was not sufficient to establish cause of a necessitous and compelling nature for voluntarily resigning her employment.

7. The school's management could not be confident of Claimant's objectivity, given her relationship with Treskot. At that same time, involving Claimant in this matter would place her in an awkward position vis-à-vis Treskot.

Finally, Claimant failed in her duty to preserve employment. Claimant asked the Board to revisit the decision to eliminate Treskot's position, but it was not her prerogative to make this demand. Claimant's May 9, 2008, letter to the Board cannot be considered as a sincere effort to preserve her job. In any case, Claimant did not wait to see how the staffing change would affect her or the school before announcing her resignation. *See Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 48, 565 A.2d 127, 131 (1989) (holding that an employee must give a change in working conditions a chance before quitting). Claimant simply issued an ultimatum to Employer that it yield to her views, but the ultimatum did not satisfy her duty to preserve employment.

For the foregoing reasons, we reverse the decision of the Board.

### ORDER

AND NOW, this 19th day of October, 2009, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated December 2, 2008, is hereby REVERSED.

DISSENTING OPINION BY Senior Judge McCLOSKEY.

I respectfully dissent as I disagree with the majority's conclusion that Sherril Newmark (Claimant) failed to establish a necessitous and compelling reason for leaving her employment.

Claimant testified the behavior coordinator position had been created due to many incidents at the school involving behaviorally disturbed children. She stated that it was an ongoing struggle to deal with the behavioral problems of the students at the school. In an e-mail to Dr. Herman Axelrod, she explained that "trying to keep this program safe WITH the current staff has been challenging, exhausting, and much of the time tenuous." (A.R.R.R. at 67a) (emphasis in original). In a letter to the Green Tree School Board of Director's (School Board), she listed numerous reasons as to why the elimination of the behavioral coordinator would endanger the physical and emotional safety of the students at the school. Claimant also requested to meet with the School Board to discuss the matter, but the School Board never contacted her.

A claimant is obligated to notify an employer of a problem prior to quitting, so that the employer is given an opportunity to resolve the problem. *Unclaimed Freight Company v. Unemployment Compensation Board of Review*, 677 A.2d 377 (Pa.Cmwlth.1996). Here, Claimant notified Dr. Axelrod and the School Board of the problem. Not only did they fail to address her concerns, Dr. Axelrod actually misled Claimant. He informed her that the behavior coordinator position was being eliminated and replaced with either a computer teacher or a music teacher. However, he was aware that money in the school budget was going to be used to create a new behavior position. He neglected to inform Claimant that not only had a new position been created, but that the new position encompassed the prior duties of the behavior coordinator.

The Pennsylvania Supreme Court has explained that "[w]hen ... the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it but involuntary because outward pressures have compelled it." *Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 48, 565 A.2d 127, 131 (1989).

Claimant presented testimony as to the dangers of eliminating the behavior coordinator position. She explained that the position was created due to several behavioral incidents involving the students that had

occurred at the school and that even with the current staff of six, it was difficult keeping the children safe. While the majority deems Claimant's testimony to be "self-serving," her testimony was accepted by the Board and the Board's findings of fact are conclusive on appeal. *Craighead–Jenkins v. Unemployment Compensation Board of Review,* 796 A.2d 1031, 1033 (Pa. Cmwlth.2002). Therefore, I would have concluded that Claimant had established cause of a necessitous and compelling nature for voluntarily resigning her employment. And hence, I would have affirmed the decision of the Board.