# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ABA Support Services, LLC,      :
                Petitioner      :
                :
            v.               : No. 929 C.D. 2017
                : Submitted: March 9, 2018
Unemployment Compensation      :
Board of Review,      :
                Respondent      :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: April 5, 2018


       ABA Support Services, LLC (Employer) petitions for review of the Unemployment Compensation Board of Review's (Board) decision finding Judith Herrera (Claimant) eligible for unemployment compensation (UC) benefits because she had a necessitous and compelling reason for leaving her employment due to fear for her personal safety pursuant to Section 402(b)[1] of the Unemployment Compensation Law (Law). For the following reasons, we affirm.

---

[1] Section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b), provides that an employee is ineligible for benefits for any week "[i]n which her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."

## I.

The facts are not in dispute. Employer provides therapeutic services to children with special needs, including those with acute to moderate behavioral issues. Claimant began working for Employer as a full-time biller on December 27, 2016. When she was first hired, Employer informed Claimant that she would not deal with clients directly. Claimant worked in the administrative offices, located in the front of the building away from the classroom in the back where clients received services. At some point during Claimant's employment, she began to feel unsafe when a teenage female client grew increasingly volatile. This particular client required two-to-one services, meaning that two adults were required to care for her at all times. The client would regularly run out of the classroom to the administrative offices, including Claimant's own office, where she would bang on the office door and scream while therapists attempted to restrain her.

Claimant voiced her concerns to Employer. Employer instructed her to lock herself in her office when the client became volatile and assured her that it would attempt to obtain approval for three-to-one care for the client. However, Employer was ultimately unable to obtain such approval. One of the client's therapists, Rebecca Sutton (Sutton), allowed Claimant to take photos of several large bruises on Sutton's arms that she sustained during one of the client's outbursts. On another occasion, Claimant used her cell phone to record the client's outburst when she banged loudly on Claimant's door.

On January 23, 2017, the client had an outburst that required five of the staff to restrain her. Afterwards, the police were called and they wrote a report to

establish the aggressive behavior. Upset over the incident, Claimant left work and, the following day, voluntarily quit her job.

Claimant then applied for UC benefits, citing both personal reasons and health reasons for her voluntarily leaving employment. When the UC Service Center (Service Center) called Claimant to determine whether she left employment for personal or health reasons, Claimant answered:

> I quit because it was an unsafe work environment that affected my health. I was injured there, had to go to urgent care and had to keep my door locked. I was never made aware when hired how the work environment was.

(Reproduced Record (R.R.) at 11a.) The Service Center issued a Notice of Determination finding Claimant eligible for UC benefits for leaving her employment because of the unsafe work environment. Employer appealed.

Before the Referee, Claimant recounted that at the beginning of her employment, Employer informed her that she would have no direct contact with clients. Employer then asked her how she felt the client was a direct threat to her if she did not work directly with the client. She answered:

> Because when the client comes from the back of the classroom and literally ends up inches from my door banging and beating up her therapist as well as our boss, as well as a male therapist, that becomes a problem and that becomes a safety issue to myself.

(R.R. at 35a.)

3

Claimant also submitted into evidence photos of the bruising on Sutton's arm, compact discs containing audio recordings of Employer's client violently banging on Claimant's door, her resignation letter and a statement written by Sutton regarding the unsafe nature of Employer's work environment. Employer did not object to the introduction of any of this evidence on the basis of hearsay.[2]

Dulce Taveras, Employer's Director of Human Resources, testified that when Claimant began working, she was aware that Employer was a provider of services to children with "behaviors under the spectrum" and that the workplace was not just an administrative office. (R.R. at 38a.) When asked why Employer called the police on January 23, 2017, after the client's violent outburst, Employer responded:

> [W]hen they had four or five people restraining her and she would not subdue out of her behavior, due to Pennsylvania laws the police had to be called to write a report because we were in the process of proving to the State that the child has such aggressive behaviors that we needed more care than two-to-one. She was in – we were entering a pilot program with that client so that we can help other clients with similar aggressive behaviors and for the State to approve four-to-one care versus one-on-one or two-to-one for . . . our children in the State of Pennsylvania.

(R.R. at 37a.)

---

[2] The only objection Employer made was to the recordings on the basis that they violated the client's confidentiality under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104 – 191, 110 Stat. 1936. The Referee overruled this objection, as the recordings failed to provide any identifiable information about the client.

The Referee found Claimant eligible for benefits because her reason for leaving work – that she had a valid concern for her personal safety – was of a necessitous and compelling nature. The Referee also found that Claimant had properly raised her concerns with Employer and it was reasonable for her to believe that her safety concerns would not be addressed, leaving her no other alternative but to resign. Employer appealed to the Board, which affirmed. In addition to adopting the Referee's findings, the Board also found that "When hiring [Claimant], [Employer] informed [Claimant] that she would not be dealing with the clients directly." (R.R. at 62a.) This petition for review followed.[3]

## II.

Employer contends the Board's finding that Claimant had a necessitous and compelling reason to quit her employment is not supported by substantial evidence because Claimant did not establish that she was in danger and her fear of harm was to others' safety rather than her own.

---

[3] Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether an error of law was committed, or whether any of the parties' constitutional rights were violated. *Feinberg v. Unemployment Compensation Board of Review*, 635 A.2d 682 (Pa. Cmwlth. 1993). Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Compensation Board of Review*, 502 A.2d 738 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence. *Id.* The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829 (Pa. 1977).

Under Section 402(b) of the Law, a claimant is ineligible for benefits for any week in which her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. § 802(b).

> To prove a necessitous and compelling reason for leaving employment, a claimant must demonstrate the following: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment.

*Havrilchak v. Unemployment Compensation Board of Review*, 133 A.3d 800, 804 (Pa. Cmwlth. 2015). A reasonable fear for one's safety can constitute necessitous and compelling cause to voluntarily terminate employment. *Howell v. Unemployment Compensation Board of Review*, 501 A.2d 718 (Pa. Cmwlth. 1985).

Moreover, that reasonable belief does not have to be based upon a direct threat of harm, but only a reasonable perceived threat. In *Hoy v. Unemployment Compensation Board of Review*, 391 A.2d 1144 (Pa. Cmwlth. 1978), claimants quit their positions at a store around the time when two murder/robberies were committed in the county at retail stores similar to their employer's. The suspect was believed to be in the area. After voicing their concerns with their manager, claimants were instructed that they were not to close the store early without permission, and, if they feared for their safety, they were to lock the doors and wait for the police to arrive. In that case, we held that claimants' fear for their personal safety was reasonable and their reason for leaving employment was of a necessitous and compelling nature.

6

In this case, Claimant had a necessitous and compelling reason for leaving her employment – fear for her personal safety because Employer was unable to control the client's violent tantrums, which were growing progressively worse. Claimant informed Employer about her safety concerns, yet Employer was unable to prevent the client from repeatedly assaulting and injuring staff, escaping her classroom, running through the building, damaging furniture, and running to Claimant's office where she would scream, and pound on Claimant's locked office door and try to break the glass window before being forcibly subdued by up to five staff members. Furthermore, the only reason that Claimant had not been directly harmed is because the client had not yet succeeded in breaking down Claimant's office door. Given these facts, Claimant has shown that the danger was real and not merely perceived as dangerous, and that she gave Employer adequate opportunity to address her safety concerns.[4]

---

[4] Employer contends that the Board impermissibly relied upon hearsay, specifically, a written statement by Sutton recounting the dangers posed by the client, as well as photos taken by Claimant showing the injuries Sutton sustained while dealing with that client. While hearsay evidence, properly objected to, is not competent evidence to support a finding of the Board, "hearsay evidence admitted into evidence without objection will be given its natural probative effect and may support a finding of the Board if it is corroborated by any competent evidence in the record." *Bailey v. Unemployment Compensation Board of Review*, 597 A.2d 241, 243 (Pa. Cmwlth. 1991). The photos are not hearsay evidence. Aside from the fact that Claimant herself took them, Claimant also, without objection, testified that she possessed "pictures of one of [the client's] therapists who gave [her] permission to submit [pictures] of her injuries [Sutton] sustained because of that client." (R.R. at 31a.) While Sutton's statement that the client caused her injuries is hearsay, it was admitted without objection and corroborated by Employer's apparent admission that the pictures did reflect injuries sustained by Sutton at the hands of the client. When asked by the Referee about Sutton's injuries depicted in the photographs, Employer's witness responded, "And that is what -- those are the therapists . . . who work with aggressive children and anyone who works with aggressive children has training, knows what . . . can happen. . . ." (R.R. at 37a.)

Despite these facts, Employer contends this case is analogous to *Green Tree School District v. Unemployment Compensation Board of Review*, 982 A.2d 573 (Pa. Cmwlth. 2009). In that case, the claimant, the director of education of a school for autistic children, resigned because the school's elimination of one "behavior coordinator" position rendered her unable to ensure the safety of the students and the staff. We held that the claimant was ineligible for benefits because she did not testify that she was personally in danger, only that others may be in danger. We also found her ineligible because for the danger to be "real," the test is not whether a claimant's belief is a genuine one but, rather, whether the claimant has demonstrated that the workplace environment has placed "real," *i.e.*, actual and extreme pressure on the claimant to leave her employment. *Id.* at 578.

Unlike in *Green Tree*, as previously recounted, Claimant, in this case, demonstrated that she was personally in danger because the violent behavior repeatedly occurred right outside her office door, and was directed at her personally, and she was compelled to take refuge from the violent client by locking her office door.

Based on the findings made by the Board, which were supported by substantial evidence, it was reasonable for Claimant to fear for her personal safety and leave her employment. Accordingly, the Board's decision is affirmed.

 

_____

DAN PELLEGRINI, Senior Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

ABA Support Services, LLC,   :
      Petitioner :
         :
    v.     : No. 929 C.D. 2017
         :
Unemployment Compensation :
Board of Review,    :
      Respondent :

# **O R D E R**

AND NOW, this 5<u>th</u> day of <u>April</u>, 2018, the Unemployment Compensation Board of Review's order dated June 9, 2017, is affirmed.

_____
DAN PELLEGRINI, Senior Judge