598 A.2d 1083

**Ann C. AYRES, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs, July 6, 1990.

Decided Oct. 30, 1991.

312

James M. Marsh, for petitioner.

Anand K. Rajan, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BYER, Judge.

A conflict between one's personal ethics and the duties of one's job can present a painful dilemma. In an unemployment compensation context, the issue is whether an employee's good faith, subjective judgment that her employment duties involved unethical conduct is sufficient to establish a compelling and necessitous reason for her voluntarily terminating employment, or whether the employee must establish an objective basis for concluding that her employment duties were in conflict with her legal duties or recognized ethical standards.

Ann C. Ayres appeals an order of the Unemployment Compensation Board of Review (UCBR) denying benefits, ordering recoupment of overpayment, and imposing penalty weeks.

During July and August 1989, Ayres received unemployment benefits. In September 1989, Kelly Services, Inc. (employer) hired Ayres as a "telemarketer." The position required Ayres to call prospective customers and present an introductory offer for "accidental death" insurance.[1] Under the offer, J.C. Penney would pay a new customer's insurance premiums for three months. At the end of three months, the customer would assume responsibility for payments.

Ayres believed that presenting offers for insurance in the manner required by employer was unethical and against her conscience. After four hours of training and one hour of work, she voluntarily terminated her employment. Ayres did not submit her hours to employer for compensation. Employer subsequently mailed Ayres a check, which she refused to cash. Believing that she had a necessitous and compelling reason to voluntarily quit, Ayres continued filing for unemployment benefits.

The Office of Employment Security (OES) denied benefits to Ayres on the basis of section 402(b) of the

---

1. The record is unclear as to the precise name of the company offering the insurance beyond a broad reference to "J.C. Penney."

Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. 2897, *as amended,* 43 P.S. § 802(b),[2] and found her liable for a "fault" overpayment under section 804(a), 43 P.S. § 874(a).[3] Ayres appealed this determination and an evidentiary hearing was held before a referee. The referee affirmed the denial of benefits, ordered recoupment of the overpayment, and imposed seven penalty weeks pursuant to section 801(b) of the act, 43 P.S. § 871(b).[4] The UCBR affirmed, and Ayres appealed. We affirm the denial of benefits but reverse with respect to the fault overpayment and imposition of penalty weeks.[5]

### *Ethical Disagreement as Cause of Compelling and Necessitous Nature*

At the hearing, Ayres testified that her sales pitch misled potential customers as to the nature of the insurance prod-

2. Section 402(b), 43 P.S. § 802(b), provides:
An employe shall be ineligible for compensation for any week—
....
(b) In which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act....

3. Section 804(a), 43 P.S. § 874(a), provides:
(a) Any person who by reason of [her] fault has received any sum as compensation under this act to which [she] was not entitled shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by [her]....

4. Section 801(b), 43 P.S. § 871(b), provides:
Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase any compensation or other payment under this act ... may be disqualified in addition to such week or weeks of improper payments for a penalty period of two weeks and for not more than one additional week for each such week of improper payment....

5. Our review is limited to a determination of whether findings of fact are supported by substantial evidence, whether an error of law was committed, or whether any of the Ayres's constitutional rights have been violated. 2 Pa.C.S. § 704. Whether an employee's reasons for terminating her employment were of a necessitous and compelling nature is a legal conclusion subject to our review. *Truitt v. Unemployment Compensation Board of Review,* 527 Pa. 138, 589 A.2d 208 (1991).

uct. She feared that customers might believe they are purchasing "life" insurance when, in fact, the coverage was much more limited. In addition, she argued that the insurance premiums were unreasonable when compared to the coverage received. Employer argued that Ayres's beliefs were unjustified and that Ayres failed to demonstrate that her "sales pitch" was unlawful or unethical.

An employee who voluntarily terminates employment has the burden of proving that such termination was for cause of a necessitous and compelling reason. *Radnor Township School District v. Unemployment Compensation Board of Review*, 135 Pa.Commonwealth Ct. 406, 580 A.2d 934 (1990). Our Supreme Court has defined necessitous and compelling cause as follows:

> "[G]ood cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

*Truitt v. Unemployment Compensation Board of Review*, 527 Pa. 138, 142–143, 589 A.2d, 208, 210 (1991) (quoting *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977)). Ayres argues that she had cause of a necessitous and compelling nature based upon our holding in *Share v. Unemployment Compensation Board of Review*, 99 Pa. Commonwealth Ct. 119, 512 A.2d 794 (1986), as controlling.

In *Share*, the claimant was accounting director and director of administration for the employer. Claimant's supervisor directed her to make inaccurate entries into employer's books. Although the matter was being investigated by auditors, claimant voluntarily quit. At the hearing, one auditor testified that he did not believe that this practice was illegal, but it was improper from an accounting standpoint. In that case, we held that where the practice of an employer is at best highly questionable, the avoidance of that practice would be the prudent course of action. In

*Share*, the practice of entering inaccurate information so greatly affected the claimant's professional and personal integrity that it justified her voluntary quit.

Employer argues that our holding in *Miller v. Unemployment Compensation Board of Review*, 73 Pa.Commonwealth Ct. 438, 458 A.2d 334 (1983), is controlling. In *Miller*, the director of nursing in a nursing home voluntarily quit, alleging that the home's failure to maintain proper levels of care required her to violate her professional responsibilities. In rejecting her argument that she quit for a necessitous and compelling reason, we held:

> [T]he claimant failed to meet her burden of proof. Our review of the record indicates that she failed to establish that [employer's] staffing policies with which she was dissatisfied were criminal or unlawful activities. Her unsubstantiated beliefs standing alone will not suffice. Similarly, her contention that she was forced by [employer] to breach her professional responsibilities was not supported by evidence as to any statute, regulation or professional code of ethics which would be applicable.

*Id.*, 73 Pa.Commonwealth Ct. at 439–40, 458 A.2d at 335 (footnotes omitted).

■ We do not believe that there is a conflict between our holdings in *Share* and *Miller* or that they are mutually exclusive. In cases where employees quit over matters of conscience, it is necessary to distinguish those employees who merely find their work distasteful or who dislike their duties from employees whose work required them to do something wrong. *Share* and *Miller* reflect this important distinction. For example, a person might find work as a salesperson distasteful if she does not believe in the product. If this belief is only personal, without any demonstration that the duties of employment conflict with any objective standard of ethics, legality or morality, the employee's decision to quit is for personal reasons and is not compensable.

■ Therefore, we hold that where there is no express violation of law, regulation or professional ethics as in

*Miller,* an employee does not establish cause of a compelling or necessitous nature in this type of case unless the employee proves that the duties required by employer so affected his or her professional and personal integrity that it would justify the voluntary quit. *Share.* The practice of employer, at best, must be highly questionable so that avoidance of the practice would be the prudent course of action. *Id.*

■ Here, Ayres argues that employer's method of selling insurance was unethical and against her conscience. Ayres presented her own sincere but unsubstantiated beliefs without reference to an applicable code, regulation or statute as would be required by *Miller.* Likewise, the record shows no practice of the employer the avoidance of which would be the prudent course of action as required by *Share.* Ayres' sincere yet very personal disagreement with employer's methods are not sufficient to establish a necessitous and compelling reason for leaving her job. Ayres clearly acted in subjective good faith, but she failed to establish an objective justification for her action. While we commend Ayres for following her conscience, we cannot hold mere subjective beliefs to constitute cause of a necessitous and compelling nature. To do otherwise would place employers at the mercy of the unsubstantiated personal beliefs of their employees. Based on the standards applied in both *Miller* and *Share,* as well as our review of the record, we must affirm the UCBR's denial of benefits to the Ayres.

### Fault Overpayment and Penalty Weeks

Ayres contests the UCBR's finding of a section 804(a), 43 P.S. § 874(a), "fault" overpayment as well as the imposition of penalty weeks pursuant to section 801(b), 43 P.S. § 871(b). Ayres argues that the finding of a fault overpayment is not based on substantial evidence. Based on our review of the record, we agree.

The record in this case is convoluted at best, through no fault of Ayres. However, the record does show that Ayres

reported no earnings for her four hours of training and one hour of work as a telemarketer. Ayres did not expect nor intend to receive payment for these hours of training and work as she refused to submit a record of her hours to employer. The check subsequently mailed to Ayres remains uncashed.

▮ Under section 804(a) of the act, 43 P.S. § 874(a), the word "fault" connotes an act to which blame, censure, culpability, shortcoming or impropriety attaches. *Maiorana v. Unemployment Compensation Board of Review*, 70 Pa.Commonwealth Ct. 614, 453 A.2d 747 (1982). Ayres filed for benefits in good faith. Her uncontradicted testimony emphasized that Ayres sincerely believed that she had cause of a necessitous and compelling nature for leaving employment. Our review of the record finds no false or misleading statements by the Ayres or other evidence supporting the UCBR's finding of a fault overpayment. *See Greenawalt v. Unemployment Compensation Board of Review*, 117 Pa.Commonwealth Ct. 96, 543 A.2d 209 (1988).

We affirm the UCBR's decision as to the denial of benefits, but reverse as to the finding of fault on the part of Ayres. We hold that the benefits paid to Ayres for the five weeks following her voluntary quit are a nonfault overpayment subject to recoupment under section 804(b), 43 P.S. § 874(b)(1).[6] We also hold that Ayres is not liable for penalty weeks imposed by the UCBR under section 801(b), 43 P.S. § 871(b). We remand to the UCBR for computation of the overpayment to Ayres which is subject to recoupment.

### ORDER

We affirm the order of the Unemployment Compensation Board of Review to the extent it denied benefits to Ayres,

6. This section provides, in part:
   Any person who other than by reason of [her] fault has received with respect to a benefit year any sum as compensation under this act to which [she] was not entitled shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to [her] with respect to such benefit year, or the three-year period immediately following such benefit year....

reverse to the extent that it ordered recoupment under section 804(a), 43 P.S. § 874(a) and imposed penalty weeks under section 801(b), 43 P.S. § 871(b), and remand for calculation of recoupable benefits under section 804(b), 43 P.S. § 874(b).

Jurisdiction relinquished.