# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Daniell Hoffman, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 757 C.D. 2016 |
| | : | Submitted: October 7, 2016 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                                   **FILED:  December 16, 2016**


Petitioner Daniell Hoffman (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board).  The Board affirmed a Referee's determination that Claimant was ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law), relating to voluntarily leaving employment without cause of a necessitous and compelling nature.[1]  For the reasons set forth below, we affirm.

Claimant was employed as a maintenance worker for Northampton Community College (Employer).  (Certified Record (C.R.), Item No. 2.)  Claimant filed for unemployment compensation benefits after she voluntarily resigned on

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

January 6, 2016. (*Id.*) The Allentown UC Service Center (Service Center) issued a determination finding Claimant eligible for unemployment compensation benefits. (C.R., Item No. 4.) Employer appealed the Service Center's determination, and a Referee conducted a hearing on March 9, 2016.

Claimant was first to testify at the hearing. (C.R., Item No. 8, at 4-21.) Claimant testified that she resigned from her position based on being treated differently as the only female maintenance worker, which resulted in unsafe working conditions. (*Id.* at 8-9). She explained that she was part of a work crew of "Maintenance 1" workers, the rest of whom were all men. (*Id.* at 6.) Claimant testified that she was treated differently as the only female in that the men would take the assignments that were more desirable and would work in pairs, while she was left to work by herself on assignments that required more than one person to be completed safely. (*Id.* at 7-8.) According to Claimant, as a direct result of being forced to complete tasks by herself, she sustained multiple serious injuries. (*Id.* at 9.) Claimant testified that this disparate treatment first caused her to lose part of a finger. (*Id.* at 9.)

Claimant testified that Employer promised to lighten her work load after she returned from her finger injury, but she did not actually receive a lighter load. (*Id.*) Later, Claimant was injured when she fell off of a ten foot ladder, after which an ambulance brought her to the hospital for treatment. (*Id.*) Despite her treating physician recommending two days off work, she took an additional personal day and an entire weekend to recover. (*Id.*) Finally, Claimant was injured when she attempted to hang a whiteboard and the whiteboard fell against her. (*Id.* at 10.) She was diagnosed with a torn rotator cuff and required surgery. (*Id.*)

2

Brett Last (Last), Employer's Director of Human Resources, testified first for Employer. Last testified that he began working in his position in July 2015. (*Id.* at 22.) He explained that he met with Claimant within the first two weeks he began working for Employer. (*Id.*) Last testified that Claimant first expressed that she was uncomfortable with her current restrictions that were part of a workers' compensation matter. (*Id.*) He responded that Claimant should speak with her physician if she had an issue with the limitations the physician assigned. (*Id.*) Last testified that Claimant then described grievances that she had with Employer, back to 2012. (*Id.* at 23.) Several times Claimant mentioned her intent to sue Employer. (*Id.*) Last testified that Claimant met with Human Resources and Claimaint's management team multiple times. (*Id.* at 24.) Last testified that, in an effort to resolve the dilemma, Employer provided Claimant with data that demonstrated that the majority of the other maintenance workers were also assigned projects to complete individually. (*Id.*) Last explained that Claimant did not complain about any grievances that occurred after Last began working for Employer. (*Id.* at 26.) Last further testified that all the grievances that Claimant made were investigated and resolved. (*Id.* at 25.) Finally, Last testified that part of Claimant's union's collective bargaining agreement with Employer ensured that Claimant was not required to complete any task or assignment that she felt was unsafe. (*Id.*)

Next, Brian Post (Post), Employer's Assistant Director of Facilities Maintenance, testified regarding Employer's allocation of work assignments. Post testified that an assignment originates from a work order by a faculty member or student. (*Id.* at 27.) Once Post receives a work order, he sends it out to the work crew that handles the particular type of work in the work order, such as grounds

3

maintenance or building maintenance. (*Id.*) Thereafter, the crew leader would assign the work to individuals and, occasionally, to pairs. (*Id.* at 28.) Post explained that in order to address Claimant's concerns on work assignments, they gathered information on the assignments for all of Employer's maintenance workers. (*Id.*) Post testified that approximately 80% of the work orders were completed individually, while approximately 20% were completed in pairs. (*Id.*) Post also explained that whenever Claimant needed an additional maintenance worker to assist with an assignment, all that she needed to do was ask Post or her crew leader and one of them would provide an additional worker. (*Id.* at 29.)

Brian Shegina (Shegina), Employer's Associate Director of Human Resources, also testified for Employer. Shegina testified that he interacted with Claimant to resolve her workers' compensation claim. (*Id.* at 32.) He stated that the grievances that Claimant discussed with him were "resolved to the fullest extent." (*Id.*) Shegina also testified that Claimant never complained that she was being discriminated against. (*Id.*)

After Employer's witnesses testified, Claimant testified a second time, in rebuttal. Claimant testified that Employer's assignment statistics were not an accurate representation of her work environment. (*Id.* at 33-34.) Claimant testified that the data that Employer used entailed all of the various types of maintenance workers at the college, including the outdoor grounds maintenance, electrical maintenance, building maintenance at other buildings, and the night-shift building maintenance. (*Id.*) Claimant explained that it was typical for the other types of maintenance workers, such as the night-shift maintenance, to work on assignments individually. (*Id.*) Claimant further explained that within her work crew, the rest

4

of the maintenance workers completed projects individually much less frequently than she did. (*Id.* at 34.)

Post testified a second time to rebut Claimant's description of the assignment statistics. Post explained that these statistics included all of the maintenance workers because they all operate in a similar manner—*i.e.*, completing work orders that were provided to the workers from their respective crew leaders. (*Id.* at 35.) Post also explained that while some "Maintenance 1" workers complete tasks at different campus sites, the workers that complete assignments individually with the same frequency as Claimant are assigned the same type of indoor maintenance work. (*Id.*) Post reiterated that for all maintenance workers, assistance would be provided when requested. (*Id.*)

Finally, Claimant testified a third time to address her requests for help. Claimant testified that if she would ask for assistance on an assignment, she would instead be removed from the assignment and a pair of the male workers would be given the assignment. (*Id.* at 37.) She questioned why she would be removed from a project for seeking assistance. (*Id.*) She also questioned, "if two or three guys can go do that why did they send me alone to do it?" (*Id.*)

Following the hearing, the Referee issued a decision and order, reversing the Service Center's determination. (C.R., Item No. 9.) The Referee made the following findings of fact:

> 1.  The claimant was last employed as a full-time maintenance 1 worker for Northampton Community College beginning her employment with the employer on September 5, 2006 with the last day of work of January 6, 2016.
>
> 2.  Throughout the claimant's employment with the employer the claimant has raised multiple concerns either through the employer's formal grievance

5

procedure, through meeting with representatives of the human resources department and her supervisor and other personnel at the employer.

3. The employer has investigated all of the claimant's concerns and took appropriate actions when it felt necessary regarding the claimant's concerns.

4. On January 6, 2016, the claimant quit the job due to her belief she was treated differently as a female by the employer, being harassed, working in an unsafe environment and a hostile work environment.

5. After January 6, 2016, continuing work was available to the claimant.

(*Id.*) The Referee determined that Claimant voluntarily terminated her employment and failed to show cause of a necessitous and compelling nature for doing so. (*Id.*) The Referee explained that "continuing work was available" and that "the claimant did not make a good faith effort to preserve her employment prior to quitting." (*Id.*)

Claimant appealed to the Board, and on April 15, 2016, the Board affirmed the Referee's decision and order. (C.R., Item No. 15.) In so doing, the Board adopted and incorporated the Referee's findings of fact and conclusions of law. The Board more specifically noted:

Additionally, the Board credits the employers [sic] testimony that the claimant was not required to perform all jobs alone and if she felt an additional worker was needed, she merely had to radio for help.

(*Id.*) Claimant sought reconsideration with the Board, which the Board denied. (C.R., Item No. 18.) Claimant now petitions this Court for review of the Board's April 15, 2016 decision.

6

On appeal,[2] Claimant appears to contest the Board's decision in two respects. Claimant essentially argues that the Board capriciously disregarded evidence that Claimant presented and that the Board's findings of fact, adopted from the Referee's findings of fact, are not supported by substantial evidence. Claimant also argues that the Board erred as a matter of law by determining that Claimant did not have a compelling and necessitous reason for her voluntary quit.

First, we will address Claimant's argument that the Board capriciously disregarded relevant evidence in its findings of fact and that these findings, according to Claimant, are not supported by substantial evidence. Claimant argues that the Board and the Referee disregarded evidence that Employer took no action to address Claimant's grievances and instead tried to convince her that her concerns were baseless.

This Court has explained:

> When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important.

*Jackson v. Unemployment Comp. Bd. of Review*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007). We have characterized capricious disregard of evidence as "a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v.*

_____

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

7

*Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa. Cmwlth. 2004), *appeal denied*, 887 A.2d 1243 (Pa. 2005).

In an unemployment case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board also is empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388. In addition, the Board is not required to accept even uncontroverted testimony as true in making its determinations. *Edelman v. Unemployment Comp. Bd. of Review*, 310 A.2d 707, 708 (Pa. Cmwlth. 1973).

In the case now before the Court, Claimant and Employer both presented testimony regarding the resolution of Claimant's grievances. Claimant testified that she was treated differently than her male counterparts, who were given more assignments to complete in pairs. Employer's witnesses testified that Claimant received assignments to complete individually at approximately the same rate as the other maintenance workers. Last testified that Claimant could not be required, pursuant to her union's collective bargaining agreement, to work on an assignment she believed was unsafe. Post also testified that if Claimant felt she needed assistance to complete an assignment safely, all that she needed to do was request help.

8

The Board reviewed all of the testimony and found Employer's witnesses' testimony to be more credible than Claimant's.[3] The Board thus resolved all conflicts in testimony in favor of Employer. The Board made its decision to deny benefits based on the fact that it adopted the Referee's finding of fact number 3 that Employer investigated each one of Claimant's grievances and "took appropriate actions" to address those grievances. (C.R., Item No. 9, Finding of Fact (F.F.) No. 3.) The Board also specifically credited the testimony that Claimant was not forced to work individually when it was unsafe to do so, but rather merely had to request help when she felt she needed it. In so finding, the Board relied upon the testimony of Post. The Board did not disregard relevant evidence merely because it chose not to accept Claimant's version of events that Claimant was treated differently than her male counterparts.

Next we address Claimant's argument that the Board erred as a matter of law by determining that Claimant did not have a compelling and necessitous reason for her voluntary quit. Claimant has the burden of establishing that necessitous and compelling reasons existed for quitting her employment. *Empire Intimates v. Unemployment Comp. Bd. of Review*, 655 A.2d 662, 664 (Pa. Cmwlth. 1995). Claimant must establish that she acted with ordinary common sense in quitting her job, that she made a reasonable effort to preserve her

---

[3] The Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak*, 501 A.2d at 1388. Thus, in the face of conflicting evidence, the Board exercised its discretion to resolve evidentiary conflicts, and its credibility determinations "are not subject to re-evaluation on judicial review." *Id.*

employment, and that she had no other real choice than to leave her employment. *Id.*

An unsafe work environment can give an employee a necessitous and compelling reason to resign. *Fleeger v. Unemployment Comp. Bd. of Review*, 528 A.2d 264, 267 (Pa. Cmwlth. 1987). Where the issue is safety, a claimant must present objective evidence of an unsafe working condition. *Green Tree Sch. v. Unemployment Comp. Bd. of Review*, 982 A.2d 573, 578 (Pa. Cmwlth. 2009). On the other hand, safety "fears" alone do not constitute a compelling reason to resign. In *Potts v. Unemployment Compensation Board of Review*, 406 A.2d 585, 586 (Pa. Cmwlth. 1979), this Court denied benefits to a claimant who was "simply fearful" but unable to prove the workplace was dangerous. Furthermore, a claimant's personal disagreement with her employer's methods does not constitute a compelling reason to leave. *Ayres v. Unemployment Comp. Bd. of Review*, 598 A.2d 1083, 1087 (Pa. Cmwlth. 1991). Mere dissatisfaction with working conditions is not cause of a compelling nature to terminate one's employment. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

Here, Claimant argues that her voluntary quit was of a necessitous and compelling nature because she was forced to work on projects individually when it was unsafe to do so. The Board found, however, that Claimant "was not required to perform all jobs alone and if she felt an additional worker was needed, she merely had to radio for help." (C.R., Item No. 15.) Claimant also testified that when she asked for help, she would either receive help or be removed from an assignment, which would then be given to a pair of her male counterparts. In either situation, whether she received help or she was removed from an

10

assignment, the result is effectively the same—Claimant was not forced to complete a project individually when unsafe to do so. As such, Claimant has failed to show "objective evidence of an unsafe working condition." *Green Tree Sch.*, 982 A.2d at 578. Instead, the record demonstrates that Claimant was dissatisfied with Employer's methods for distributing assignments to the maintenance workers. Pursuant to *Brunswick Hotel & Conference Center*, mere dissatisfaction with working conditions is insufficient to establish a necessitous and compelling reason to voluntarily leave employment.

We conclude, therefore, that Claimant is ineligible for unemployment compensation benefits under Section 402(b) of the Law. Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daniell Hoffman, : 
          Petitioner : 
           : 
          v. :   No. 757 C.D. 2016
           : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

## **O R D E R**

AND NOW, this 16th day of December, 2016, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge