# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Mann,                   :
               Petitioner        :
                                  :   No.  1056 C.D. 2019
            v.                   :
                                  :   SUBMITTED:  June 9, 2020
Unemployment Compensation    :
Board of Review,                 :
               Respondent      :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                       FILED:  January 22, 2021

Kimberly Mann (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board), dated July 19, 2019, affirming the decision of a referee, which denied her benefits under section 402(b) of the Unemployment Compensation Law (Law).[2]  The Board concluded that Claimant failed to establish a necessitous and compelling reason to voluntarily terminate her employment.  Upon review, we affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b) (relating to voluntary separation from employment without cause of a necessitous and compelling nature).

Claimant worked full-time as the Director of Human Resources for Happier Living Home Care[3] (Employer) until December 14, 2018, when she voluntarily resigned from her position.[4] (F.F. Nos. 1, 11, (Certified Record (C.R.) at Item No. 15; Notes of Testimony (N.T.) at 7-8.) Claimant applied for unemployment compensation benefits and by decision mailed March 20, 2018, the local service center found her not ineligible for benefits under section 402(b) of the Law. (C.R. at Item No. 7.) In particular, the local service center determined that Claimant satisfied her burden of proving that she had a necessitous and compelling reason to quit because Employer "had someone that was not an employee audit the employee files [which allowed that person] to have access to employee personal [sic] records," and there was no alternative available for Claimant to resolve the situation. *Id.*

Employer appealed the local service center's determination to a referee, and a hearing was convened on April 30, 2019. (C.R. at Item Nos. 8, 10.) At the hearing, Claimant testified that she last worked on December 17, 2018. (C.R. at Item No. 11, N.T. at 8.) Claimant explained that she verbally informed Employer's executive director, Dawn Reed-Seeger, of her intention to voluntarily end her employment. (N.T. at 2-3, 8.) Claimant testified that she resigned because she was asked to participate in "illegal activity" that she believed was in violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).[5] (N.T. at 8.) Claimant

---

[3] Employer subsequently changed its name to Wyncote Wellness. (Certified Record (C.R.) at Item No. 8.)

[4] Claimant verbally resigned on December 14, 2018, and identified the effective date of her resignation as December 28, 2018; however, Employer did not accept this date, and accepted Claimant's resignation effective as of December 17, 2018. (Findings of Fact (F.F.) Nos. 11-12.)

[5] Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.).

also testified that she believed Employer's actions violated other employment laws, constituted employment practices that she would not support, and placed her professional reputation in jeopardy. (N.T. at 8, 11.)

Particularly, Claimant testified that the alleged illegal activity occurred with regard to an internal audit process that she instituted to ensure necessary information was in each employee's file. (N.T. at 8.) Claimant explained that members of Employer's administrative staff were to conduct and participate in the audit. *Id.* However, Claimant testified that "someone who was not an employee" was asked by Employer to audit the files, and she advised Ms. Reed-Seeger and Dominic Connor, the owner, on December 7, 2018, that this activity was "in direct violation of HIPAA" due to the presence of confidential information in the files.[6] (N.T. at 8, 15.) Claimant maintained that Ms. Reed-Seeger did not respond to her comment, and subsequently, she witnessed Ms. Reed-Seeger, Mr. Connor, and the person she believed not to be an employee, in the conference room reviewing employee files. (N.T. at 15.)

Specifically, Claimant explained that due to the confidential nature of the information in the employee files, it was a violation of HIPAA to have an unemployed person review the files. (N.T. at 11.) Nevertheless, when asked why she believed Employer's practices violated the law, Claimant reiterated that there were confidential documents in the files and that HIPAA regulations have "all kinds of guidelines around who should be reviewing files," and that employees have to approve individuals to review the files who would not reasonably be allowed to do so under the law. (N.T. at 19.) She also testified that it was understood that Employer would not permit non-employees to review these files and that she knew the person asked to review the files

---

[6] Specifically, Claimant explained that there was sensitive and confidential information in the files including "social security numbers, addresses, birthdates, [and] criminal background results." (N.T. at 11.)

3

was not an employee. (N.T. at 19, 20.) Claimant testified that she did not report a HIPAA violation, a privacy violation, or otherwise, to any relevant authority. (N.T. at 19.)

With regard to her personal involvement in the activity, Claimant testified that after the completed audits came back to her, she was required to "sign off" on or approve them. (N.T. at 11.) More specifically, she explained that, as part of the process for everything that went into an employment file, she "signed off" on it, indicating that she "read it, [] took a look at it, [and knew] this particular person audited the files." *Id*. When asked by the referee if Claimant would have been personally liable for this activity, Claimant responded that she was unaware if she would be personally liable, but stated that she "would [not have] felt comfortable" continuing to support activity she knew violated the law. (N.T. at 16.) Claimant testified that, as a certified[7] human resources professional, she felt that her professional reputation would be in jeopardy and she felt responsible "for anything that takes place [that has] to do with employment law." (N.T. at 11.) Moreover, Claimant testified that as a certified human resources professional she felt responsible to protect employees' rights, and that she felt that Employer's actions were contrary to her advice as it related to employment law. (N.T. at 10.) Additionally, Claimant explained that she felt the alleged illegal activity would come back on her because she was the Human Resources Director. (N.T. at 11.)

Ms. Reed-Seeger testified on behalf of Employer. Ms. Reed-Seeger maintained that Claimant verbally resigned because she needed a position that was "more of a challenging experience . . . ." (N.T. at 12.) Ms. Reed-Seeger maintained that Employer has an application on file with regard to the unnamed individual who

---

[7] Claimant testified that she was certified through the Society of Human Resources Management and has been working in human resources for at least 15 years. (N.T. at 12.)

4

was allegedly a non-employee.[8] (N.T. at 20.) Ms. Reed-Seeger clarified that the individual's position was temporary, that his first day was December 7, 2018, and that he was qualified to conduct the audit because he could "go through paperwork" and organize it. (N.T. at 23.) Ms. Reed-Seeger testified that this individual would not read the information in the file, but acknowledged that he was nevertheless handling the files in some manner. (N.T. at 23-24.)

In response to Ms. Reed-Seeger's testimony as to Claimant's reason for quitting, Claimant maintains that she quit because of Employer's practices, the way that Employer was "sort of" following policies and procedures, and Employer's activity with regard to the audits. (N.T. at 16.) Claimant testified that as Employer's Human Resources Director, she knew about everyone who was hired because the hiring process had to go through her, that she was unaware that an individual had been hired to assist with the audit, and that she did not see an employment file for a new employee. (N.T. at 24.) Claimant testified that when she raised this issue to Mr. Connor and Ms. Reed-Seeger, neither told her that this individual had been hired. (N.T. at 24.)

The referee issued his decision, reversing the determination of the local service center. The referee concluded that Claimant failed to satisfy her burden because she did not provide competent evidence as to any specific action Employer required her to do; that the individual performing the audit was not an employee; and that she failed to identify what laws were violated, how they were violated, or what laws were at issue. (Referee's decision at 4.) Moreover, the referee stated that Claimant actually acknowledged that she did not take steps to ascertain whether Employer violated any law, and that "Claimant's unsubstantiated and subjective belief" that Employer's actions constituted a HIPAA violation was not supported by record evidence. *Id.* In

---

[8] Yet, when asked if she had a name for this individual, Ms. Reed-Seeger testified that she did not. (N.T. at 22.)

sum, the referee concluded that Claimant was ineligible for benefits under section 402(b) of the Law because Claimant's decision to quit was personal in nature, and as such, she failed to establish that she had a necessitous and compelling reason to leave her employment or that she acted with ordinary common sense in attempting to preserve her employment. *Id.* Claimant subsequently appealed to the Board.

The Board issued its decision, dated July 19, 2019, and made its own findings of fact, which provide, in relevant part, as follows: Employer was required to perform background checks before hiring employees. (F.F. No. 2.) Claimant instituted a process, which utilized members of Employer's administrative staff, to audit employee files which contained sensitive information such as social security numbers, addresses, birthdates, criminal background results, and personal medical information. (F.F. No. 3.) The audit involved ensuring that each employee file contained the required items. *Id.* On December 7, 2018, Mr. Connor and Ms. Reed-Seeger "performed their own audit of the files with the help of an outside individual whom [Claimant] believed to be a friend or colleague of the owner." (F.F. No. 5.) Claimant believed that this conduct involved HIPAA or other employment laws, and expressed her concerns to Ms. Reed-Seeger on December 7, 2018, to which Ms. Reed-Seeger did not respond. (F.F. Nos. 6-7.) Ms. Reed-Seeger and Mr. Connor reviewed the paperwork in the file, checked off what was missing, and gave the file to the unnamed individual to organize the paperwork, and the audit documentation was signed by Ms. Reed-Seeger and Mr. Connor. (F.F. Nos. 8-9.) Claimant was unaware if she could be held personally liable if Employer was cited for a HIPAA violation. (F.F. No. 10.) Claimant tendered her verbal resignation to Ms. Reed-Seeger on December 14, 2018, and her resignation was effective on December 17, 2018. (F.F. Nos. 11-12.) Claimant

voluntarily ended her employment after alleging that Employer was engaged in illegal activity. (F.F. No. 13.)

The Board affirmed the referee's decision and denied Claimant benefits. (Board's decision at 3.) The Board concluded that even if the individual who helped with the audit was not an employee, Claimant failed to establish that HIPAA applied in that situation, that HIPAA laws were violated, or that any other law applied and/or was violated. *Id.* The Board also explained that Claimant admitted that she was unaware if she could be personally liable if Employer was cited and that her "vague testimony" about her reputation and violation of employment laws was insufficient to carry her burden of proof. *Id.* The Board also concluded that while Claimant alleged Employer's activity violated the law, she failed to prove that the activity actually violated the law or was of such a nature that it could be viewed as highly questionable. *Id.* Claimant subsequently appealed to this Court.

## Discussion

On appeal,[9] Claimant raises the single issue of whether she had a necessitous and compelling reason to quit her employment when Employer was engaged in potentially illegal, and ethically questionable, conduct that put her professional reputation in jeopardy. Claimant argues that because she reasonably believed the disclosure of confidential employee information violated the law, she had a necessitous and compelling reason to voluntarily end her employment. Claimant

---

[9] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether findings of fact are supported by substantial evidence. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1162 n.2 (Pa. Cmwlth. 2013). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chartiers Community Mental Health and Retardation Center v. Unemployment Compensation Board of Review*, 134 A.3d 1165, 1170 (Pa. Cmwlth. 2016).

7

maintains that under *Tom Tobin Wholesale v. Unemployment Compensation Board of Review*, 600 A.2d 680, 681 (Pa. Cmwlth. 1991), a claimant merely needs to show that she reasonably believed that her employer was engaging in illegal activity in order to prove a necessitous and compelling reason to terminate employment. As such, Claimant argues that the Board's conclusion was erroneous because Claimant only had to show that she "reasonably believed" that Employer's conduct violated the law, and she was not required to establish the specific laws that applied or were violated. (Claimant's Br. at 13) (emphasis omitted). Claimant then argues that her belief that HIPAA was violated was reasonable because "HIPAA is generally known because of the 'Privacy Rule,'"[10] and Claimant knew the files contained personal medical information. Claimant also asserts that her belief was reasonable because the Americans with Disabilities Act, 42 U.S.C. §§12101-12213, and the Family and Medical Leave Act, 29 U.S.C. §§2601-2654, both have regulations that relate to the maintenance of confidential medical records and that the disclosure of social security numbers and other identification is subject to other privacy restrictions.

Second, Claimant argues that she could not continue working because Employer was engaged in a "highly questionable" practice. (Claimant's Br. at 14.) Claimant acknowledges that under *Ayres v. Unemployment Compensation Board of Review*, 598 A.2d 1083 (Pa. Cmwlth. 1991), personal beliefs, even if sincere, without more are insufficient to support a finding that a claimant had a necessitous and compelling reason to quit and that an employer's practice must be highly questionable,

---

[10] The "HIPAA privacy rule prohibits disclosure of a patient's personal health information. HIPAA regulations define 'health information' as information that 'relates to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual.'" *Lancaster Emergency Medical Services Association v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1749 C.D. 2014, filed June 4, 2015) (unreported) (citing 45 C.F.R. §160.103).

8

at best, so that the avoidance of the action would be prudent. Claimant maintains that here, she knew "something was wrong about a random individual" conducting the audit and that she evaluated the situation as "highly questionable" based on her years of experience in human resources. (Claimant's Br. at 16.)

Finally, Claimant argues that she had good cause to leave her employment because of the threat to her personal and professional reputation. To support this position, Claimant points to *Share v. Unemployment Compensation Board of Review*, 512 A.2d 794 (Pa. Cmwlth. 1986), where we reversed the Board's decision denying benefits because the employer's behavior so affected the claimant's personal and professional integrity that the claimant remained eligible for benefits. Claimant argues that similarly, here, she was asked to risk her professional reputation due to Employer's actions.

In response, the Board argues that Claimant failed to prove that she had a necessitous and compelling reason to voluntarily quit. The Board argues Claimant was required to try to determine the illegality of the activity prior to quitting, and because she failed to do so her actions were not reasonable. The Board alternatively argues that Claimant failed to demonstrate that Employer's conduct was highly questionable or put her personal or professional integrity in jeopardy.

In support of its first point, the Board relies on *Telesound Rentals, Inc. v. Unemployment Compensation Board of Review*, 616 A.2d 190 (Pa. Cmwlth. 1992), for the proposition that if a claimant mistakenly believes an employer's actions are illegal and fails to make an effort to verify the illegality of the actions, a necessitous and compelling reason does not exist. Moreover, the Board maintains that vague references to laws are insufficient to satisfy a claimant's burden of proof in this regard. The Board maintains that here, Claimant failed to cite to any specific provision of the law to

9

establish the purported illegality of Employer's conduct, nor did she make any effort to ascertain the legality of said conduct. The Board argues that Claimant's *personal* belief that the conduct was illegal is insufficient to carry her burden.

In support of its second point, the Board argues that Claimant also failed to prove that Employer's conduct was highly questionable or placed her personal and professional reputation at risk. The Board agrees that a claimant may also prove a necessitous and compelling reason existed to voluntarily terminate employment if the claimant was required to perform highly questionable activities that affected her personal and professional integrity. The Board maintains, however, that mere distaste or dislike is insufficient to carry this burden, and that subjective beliefs without a demonstration of illegality, immorality, or unethicality, are insufficient. Factually, the Board argues that Employer's actions were not highly questionable due to the need to hire additional help, and it highlights Ms. Reed-Seeger's testimony that the individual in question applied, interviewed, and was qualified.

We turn to the merits of the instant matter. Section 402(b) of the Law provides that an employee shall be ineligible for unemployment compensation benefits for any week in which she voluntarily left her employment without a necessitous and compelling reason. 43 P.S. §802(b). "Whether an employee has a necessitous and compelling reason to voluntarily quit employment is a question of law fully reviewable by this Court." *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). A claimant who voluntarily terminates her employment bears the burden of proving that a necessitous and compelling cause existed. *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). An employee who claims to have left employment for a necessitous and compelling reason must prove that "(1)

10

circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment." *Brunswick Hotel*, 906 A.2d at 660.

Generally, where an employer requires an employee to partake in an unlawful activity, adequate cause exists to terminate employment. *Kroepil v. Unemployment Compensation Board of Review*, 411 A.2d 1320 (Pa. Cmwlth. 1980). The same is true even if an employee is not required to partake in the illegal activities, but is nevertheless employed by an employer that engages in illegal activities as a regular part of its business. *Gould v. Unemployment Compensation Board of Review,* 430 A.2d 731, 732 (Pa. Cmwlth. 1981). Moreover, even if there is no illegal activity in question, a claimant can prove a necessitous and compelling reason existed if her employer required her to take actions that were unethical or in violation of professional standards. *Ayres*, 598 A.2d at 1086; *Share*, 512 A.2d at 795. In *Ayres*, we explained that

> where there is no express violation of law, regulation or professional ethics . . . an employee does not establish cause of a compelling or necessitous nature in this type of case **unless** the employee proves that the duties required by employer so affected his or her professional and personal integrity that it would justify the voluntary quit. The practice of [the employer], at best, must be **highly questionable** so that avoidance of the practice would be the prudent course of action.

598 A.2d 1087 (citations omitted) (emphasis added).

In *Miller v. Unemployment Compensation Board of Review*, 458 A.2d 334, 335 (Pa. Cmwlth. 1983), we explained that "unsubstantiated beliefs standing alone

11

will not suffice" to carry a claimant's burden that she ended her employment with a necessitous and compelling cause. Similarly, in *Ayres*, the claimant argued that her employer's sales techniques were "unethical and against her conscience," however, we explained that the claimant "presented her own sincere but unsubstantiated beliefs without reference to an applicable code, regulation[,] or other statute." 598 A.2d at 1087. We explained that even though the claimant had a "sincere, but very personal disagreement" with her employer's practices, her personal feelings alone were insufficient to establish a necessitous and compelling reason. *Id.* Additionally, we stated that subjective beliefs without a "demonstration that the duties of employment conflict with any objective standard of ethics, legality[,] or morality," do not constitute a necessitous and compelling reason to end employment. *Id.*

Presently, although Claimant appears to have believed that Employer's conduct was illegal or highly questionable, her beliefs were not confirmed by the findings of the Board. While the Board found that Claimant "*believed* that [Employer] violated [HIPAA] and/or other employment laws," it also found that Claimant was unaware if she could be liable for Employer's actions. (F.F. Nos. 6, 10) (emphasis added). The Board concluded that Claimant did not establish that Employer's actions were highly questionable or that her personal or professional reputation was at risk. The Board's findings support its conclusion that Claimant failed to demonstrate Employer's actions conflicted with "any objective standard of ethics, legality[,] or morality." *Ayres*, 598 A.2d at 1087. As the Board found, Claimant presented no evidence aside from her personal belief that the person reviewing the files was not an agent or employee of Employer, or otherwise eligible to review the files.

Importantly, the Board explained that "[o]n appeal (from the referee's decision) [C]laimant argues that she does not have to prove a violation of the law, only

12

that [Employer's] activity was 'highly questionable.' However, [C]laimant testified repeatedly at the hearing that she quit because [Employer's] activity violated the law, not because it was 'highly questionable.'" (Board's decision at 3.) Nevertheless, the Board concluded that either way, Claimant had failed to prove that Employer allowing the unknown individual to help in the audit was highly questionable because she did not know who the person was. *Id*. Accordingly, the Board's conclusion rests on Claimant's beliefs as to the legality of Employer's conduct, not whether it was highly questionable. Nevertheless, we address Claimant's contention that Employer's conduct was "highly questionable."

Our decision in *Tom Tobin* is instructive. In that case, the claimant was employed as a computer analyst and was asked to alter a computer program for what he believed were "illegal purposes." *Tom Tobin*, 600 A.2d at 682. The claimant confronted his employer about the alterations, and the **employer acknowledged the illegality of its actions.** *Id*. The claimant voluntarily ended his employment because he was required to partake in the illegal alterations. *Id*. The claimant subsequently admitted that no illegal activity occurred because the program that was being altered was not operational at the time he ended his employment. *Id*. This case is easily distinguishable as Employer here made no concession that its activities were illegal, in fact Employer asserted its actions were legal.

*Share*, cited by Claimant, is also instructive. The claimant in *Share* was employed as an accountant. 512 A.2d at 794. Her supervisor directed her to make inaccurate entries into the employer's books. *Id*. The claimant refused to do this, and reported the activity to an audit committee, which investigated the matter. *Id*. Before the investigation was over, the claimant voluntarily terminated her employment. *Id*. The claimant presented evidence that, even though the practices were not illegal, they

13

were "improper in an accounting sense." *Id*. at 795. We stated that *Share* was controlled by *Zinman v. Unemployment Compensation Board of Review*, 305 A.2d 380 (Pa. Cmwlth. 1973), explaining that "[e]ven if the directives of [the claimant's supervisor] did not order the [claimant] to engage in an illegal act, these directives were such that we believe the claimant followed a prudent course in leaving the employer's employ and that benefits should be allowed." *Share*, 512 A.2d at 795. Thus, even though conduct may not be illegal, highly questionable conduct in derogation of one's professional and ethical responsibilities can support a conclusion that the claimant had a necessitous and compelling reason to leave her employment. Here, however, the Board's findings indicate that Claimant did not present evidence that she was asked to undertake any questionable conduct.

Finally, in *Telesound*, the claimant was employed as an accounts manager, and as a quality control measure, the employer began having "fake customers" telephone employees and record the conversations. 616 A.2d at 191. The claimant believed this practice to be illegal, and thus, voluntarily terminated his employment. *Id*. Nevertheless, the conduct at issue was determined to be lawful and the Board found that claimant was ineligible for benefits. *Id*. The issue on appeal in *Telesound* was "whether [a claimant's] erroneous belief that [his employer] was engaged in illegal activity can satisfy [a claimant's] burden of showing cause of a necessitous and compelling nature for terminating employment." *Id*. at 192. We noted that the record contained no evidence that the claimant "attempted to ascertain the true state of the law before terminating employment," and "[a]s such, the reasonableness of [the claimant's] belief is irrelevant, and [the claimant] has not satisfied his burden of showing" a necessitous and compelling reason existed to voluntarily terminate his employment. *Id*.

Here, the Board neither found that Claimant was requested to sign nor did sign the completed audits, rather, Ms. Reed-Seeger and Mr. Connor did. (F.F. No. 9.) The Board concluded Claimant did not establish Employer's actions were highly questionable or that her personal or professional reputation was at risk, notwithstanding her personal beliefs. Moreover, the Board concluded Claimant failed to demonstrate Employer's actions conflicted with "any objective standard of ethics, legality[,] or morality." *Ayres*, 598 A.2d at 1087. Specifically, the Board found Claimant presented no evidence aside from her personal belief that the person reviewing the files was not an agent or employee of Employer, or otherwise eligible to review the files. Although Claimant's beliefs may have been sincere, based on the Board's findings we cannot find the Board erred in its conclusion.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Mann,      :
    Petitioner   :
          :  No.  1056 C.D. 2019
  v.       :
          :
Unemployment Compensation :
Board of Review,     :
    Respondent  :

## *ORDER*

AND NOW, this 22nd day of January, 2021, the July 19, 2019 order of the Unemployment Compensation Board of Review that determined that Kimberly Mann was ineligible for benefits is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge