IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica Braunstein,                       :
                  Petitioner       :
                                  :
           v.                    :    No. 1786 C.D. 2024
                                  :    Submitted: March 3, 2026
Unemployment Compensation Board   :
of Review,                         :
              Respondent    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: May 19, 2026


      Jessica Braunstein (Claimant), pro se, seeks review of an Order of the Unemployment Compensation (UC) Board of Review (Board), which affirmed a decision by a Referee, finding Claimant had not demonstrated a necessitous and compelling reason for voluntarily leaving her employment and thus was not eligible for UC benefits. Claimant argues she was a victim of repeated sexual harassment and retaliation, her employer OS Restaurant Services d/b/a Outback Steakhouse (Employer) was aware of this, and Employer refused to take any action to stop it; thus, Claimant had a necessitous and compelling reason for quitting. Upon careful review of the Board's factual findings, with which we are bound, we are constrained to affirm.

On December 17, 2023, Claimant voluntarily quit her employment and filed for UC benefits shortly thereafter. On her application, Claimant listed ongoing sexual harassment and safety concerns as reasons for the separation. (Certified Record (C.R.) at 7.) A UC Service Center representative left a voice message for Claimant to obtain more information about the circumstances related to her separation, but no response was received. (*Id.* at 45.) The UC Service Center subsequently issued a determination concluding Claimant was not eligible for UC benefits. (*Id.* at 48.) Claimant appealed, and a hearing was scheduled before a Referee.

At the hearing, Claimant testified as follows.[1] Claimant quit because of sexual harassment. A kitchen manager was sending her explicit videos via text message, which she immediately deleted because she was married. (*Id.* at 115.) Claimant reported the kitchen manager to the general manager and told Employer's corporate office that the kitchen manager also raped her in August 2022. (*Id.* at 115-16.) Claimant did not file a police report and attempted to obtain a Protection from Abuse (PFA) order. (*Id.* at 116.) The corporate office offered Claimant treatment. (*Id.*) Before Employer could act, the kitchen manager "quit really fast."[2] (*Id.*) Claimant also described being sexually harassed by the host. (*Id.* at 117.) After reporting that harassment to the general manager, the host was immediately fired in August.[3] (*Id.*) Claimant further alleged she was sexually harassed by a busboy and other coworkers, and this harassment is what led to her leaving her employment. (*Id.* at

---

[1] Employer did not attend the hearing.

[2] Claimant testified that she reported the kitchen manager in September, and he quit the same month. Claimant did not identify what year. (C.R. at 116-17.)

[3] Claimant did not identify what year this occurred. She testified that "at the time the [kitchen] manager quit, [Claimant] was being sexually harassed by" the host, and then states the host was fired in August. (C.R. at 117.)

2

117-18.) Claimant reported the busboy's sexual harassment[4] in mid-December 2023, and Employer fired the busboy in January 2024, "right after [Claimant] quit." (*Id.* at 118.) Claimant testified she reported this behavior to the general manager, who did nothing over the course of three years, possibly to the corporate office, and to the Health Department after speaking with the Equal Employment Opportunity Commission (EEOC). (*Id.* at 118-20.) Claimant testified that when she reported anything to human resources, nothing was done and the harassment worsened. (*Id.* at 120.) In terms of retaliation, Claimant stated the general manager would snort and call her names, which she reported to the Pennsylvania Human Relations Commission but not Employer, another manager would not allow her to have an extra table in her section when other employees were allowed, and female coworkers would scream at her. (*Id.* at 121.) She also described an incident in which a manager called Claimant "ghetto" while "cup[ping] butter for takeout" and asked her to move into "a more secluded area." (*Id.*)

Following a hearing, the Referee issued a decision affirming the UC Service Center's determination that Claimant was not eligible for benefits under Section 402(b) of the Unemployment Compensation Law (UC Law).[5] The Referee found, in pertinent part, as follows:

> 1. [] [C]laimant was employed by [Employer], as a full-time Server/Bartender/Hostess . . . from March 2021 and a last day of work of December 17, 2023.
>
> 2. [] [C]laimant had alleged that she had been raped by the kitchen manager in August 2022. Although [] [C]laimant attempted to get a []

---

[4] Claimant described this "sexual harassment" as "every time [the busboy] walked by [Claimant,] he would punch [Claimant] and swear at [Claimant] and act like [Claimant] was in his way when [Claimant] wasn't." (C.R. at 119.)

[5] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[]PFA[] order against the kitchen manager, [] [C]laimant did not file a criminal complaint with the police.

3. [] [C]laimant had reported to the general manager that the host had been sexually harassing her for approximately three years. [] [C]laimant eventually contacted someone from corporate office to report the host's sexual harassment and the host was fired in August 2023.

4. [] [C]laimant also reported to the general manager that the kitchen manager had been sexually harassing her, alleging he had sent her videos of him ejaculating on the restaurant tables and in the kitchen area. [] [C]laimant reported that she had immediately erased the inappropriate videos and never provided them to the general manager or law enforcement.

5. [] [C]laimant also notified corporate office of the allegation that the kitchen manager was sexually harassing her, and corporate office offered [] [C]laimant the opportunity to see a therapist for free.

6. The kitchen manager resigned from his job shortly after [] [C]laimant's report in September 2023.

7. [] [C]laimant contacted the Health Department to report continued sexual harassment by the busboy and other concerns regarding the sanitary condition in the restaurant. The individual from the Health Department suggested [] [C]laimant reach out to the EEOC, and [] [C]laimant sent them an email.

8. After [] [C]laimant made her complaint to the Health Department and EEOC, [] [C]laimant felt she was being retaliated against by the general manager and a female manager in the restaurant. [] [C]laimant did not report any retaliatory actions taken by the general manager or the female manager to corporate office.

9. [] [C]laimant also felt she was being retaliated against by other female co-workers and decided to quit her job.

10. Continuing work was available to [] [C]laimant.

11. [] [C]laimant quit her job.

4

(Referee's Findings of Fact (FOF) ¶¶ 1-11.)[6]

The Referee stated that, despite Claimant's numerous allegations, she continued to work with the accused harassers and the harassment by the manager and host occurred almost six months before Claimant quit. (Referee's Decision at 2-3.) The Referee also explained that while there was competent evidence Claimant reported the harassment by the busboy to the Health Department and EEOC, "there was no competent testimony that [] [C]laimant had reported these instances to corporate office requesting a resolution." (*Id.* at 3.) In addition, the Referee stated "there was no competent testimony or evidence to suggest that [] [C]laimant reported this alleged retaliation to anyone in corporate office to get the retaliation to stop and preserve her employment." (*Id.*) The Referee also found "[C]laimant provided no competent testimony to explain how she was being retaliated against by other female co-workers or that that retaliation was reported." (*Id.*) The Referee continued:

> Based on [] [C]laimant's emotional reactions during the appeal hearing, the Referee does not doubt that [] [C]laimant may have experienced some trauma during the course of her employment. However, the Referee finds that much of the trauma that may have occurred, occurred six months to two years prior to [] [C]laimant's separation and cannot meet the burden of establishing necessitous and compelling cause for [] [C]laimant to quit in December 2023. Furthermore, [] [C]laimant's final complaints about the busboy's sexual harassment were made to government agencies and not to [] [E]mployer's Human Resources or corporate office, which does not demonstrate [] [C]laimant's attempt to preserve her employment prior to quitting her job. Consequently, while the Referee does not diminish whatever trauma [] [C]laimant feels she has experienced, the Referee cannot find, based on [] [C]laimant's testimony, that she has met her burden, and benefits must be denied under Section 402(b) of the [UC L]aw.

(*Id.*)

---

[6] The Referee's Decision appears in the Certified Record beginning at page 125.

Claimant appealed to the Board, which adopted and incorporated the Referee's findings and conclusions and affirmed. (*Id.* at 150-51.) Claimant filed a timely Petition for Review.

Before this Court,[7] Claimant argues the harassment and retaliation she experienced over the course of almost three years, of which Employer was aware and did not address, provided a necessitous and compelling reason, under the law. She asserts she took all reasonable steps to preserve her employment and only left when it became apparent Employer was "unable or unwilling to remedy the environment." (Claimant's Brief (Br.) at 5.) Claimant argues she reasonably believed the government agencies to whom she complained would notify Employer of the complaints and that she believed her supervisors were aware of the harassment, thereby eliminating the "need to duplicate her reports." (*Id.* at 8.) To the extent the Referee and subsequently the Board determined that many of the instances were remote in time, Claimant asserts this supports the conclusion that she acted in good faith believing Employer would remedy the situation. (*Id.*)

The Board acknowledges "Claimant made some truly alarming allegations as to why she quit her job," but asserts Claimant "did not present sufficient credible evidence to substantiate her version of events, and because of this evidentiary

---

[7] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). Substantial evidence is "relevant evidence upon which a reasonable mind could base a conclusion." *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013). In addition, "[i]n determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." *Id.* Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

6

insufficiency, along with Employer's appropriate responses to Claimant's concerns when it was informed of them, Claimant failed to demonstrate her eligibility for benefits under Section 402(b) of the [UC] Law." (Board's Br. at 7.)  The Board contends it "assigned little or no weight and credibility to most of Claimant's allegations.  And for the allegations it did credit, the Board concluded that Employer acted promptly *once it became aware* of Claimant's allegations. . . ." (*Id.* at 10 (emphasis in original).)[8]  The Board further argues that Claimant did not report many of the alleged incidents, depriving Employer of the ability to act on the complaints. (*Id.*).

We begin with the recognition that "[o]ur review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). Substantial evidence is "relevant evidence upon which a reasonable mind could base a conclusion." *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).  In addition, "[i]n determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." *Id.*  Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those

---

[8] In the Referee's Decision, which the Board adopted as its own, there are no express credibility determinations.  As discussed, *infra*, the Referee and Board found there was "no competent evidence" of retaliation or that Claimant reported the incidents. (Referee's Decision at 3.)  The Board appears to recognize the lack of express credibility determinations in its brief, stating "the Referee could have been clearer by explaining that Claimant provided no *credible* testimony." (Board's Br. at 12 n.5 (emphasis in original).)  The Board, however, is the ultimate finder of fact and nothing prevented it from making its own findings and/or elaborating on the Referee's findings.  It did not.

made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). "[T]he Board is the ultimate fact finder." *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016). As factfinder, the Board is charged with resolving any conflicts in evidence, weighing the evidence, and adjudging witness credibility. *Ductmate Indus.*, 949 A.2d at 342. So long as the Board's findings are supported by substantial evidence, they are conclusive on appeal. *Cambria Cnty. Transit Auth. v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019). The Board's findings "are not subject to reevaluation on judicial review." *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985).

Under Section 402(b) of the UC Law, "[w]here a claimant has voluntarily quit employment, in order to obtain benefits, [the claimant] must show that [the claimant] left her employment for necessitous and compelling reasons." *Collier Stone Co. v. Unemployment Comp. Bd. of Rev.*, 876 A.2d 481, 484 (Pa. Cmwlth. 2005). Here, it is undisputed that Claimant voluntarily left her employment. Therefore, **the burden is on Claimant** to show that she had a necessitous and compelling reason to do so. *Latzy v. Unemployment Comp. Bd. of Rev.*, 487 A.2d 121, 123 (Pa. Cmwlth. 1985). To satisfy this burden, Claimant must demonstrate that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment." *Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). Whether a claimant had necessitous and compelling reasons for terminating their employment

is a question of law subject to review by this Court. *Wise v. Unemployment Comp. Bd. of Rev.*, 111 A.3d 1256, 1261 (Pa. Cmwlth. 2015).

The Court has recognized that sexual harassment may constitute a necessitous and compelling reason to voluntarily quit. *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435, 440 (Pa. Cmwlth. 2016); *Johnson v. Unemployment Comp. Bd. of Rev.*, 725 A.2d 212, 213 (Pa. Cmwlth. 1999). Claimant has the burden of meeting all the requirements, including that they took **reasonable steps to preserve** their employment, such as by reporting the complaints to Employer. *Serrano*, 149 A.3d at 440. That does not mean that a claimant must "notify the employer of each and every incident of harassment . . . ." *Unclaimed Freight Co. v. Unemployment Comp. Bd. of Review*, 677 A.2d 377, 379 (Pa. Cmwlth. 1996). As we explained:

> [A] claimant will remain eligible for benefits as long as she has "taken 'common sense' action that [gives] the employer an opportunity to understand the nature of [her] objections and to take prudent steps to resolve the problem." *Id.* Furthermore, "there is a certain level of conduct that an employee will not be required to tolerate and the Court will not place all responsibility upon an employee to resolve his or her work dilemma. Ultimately the employer bears the responsibility for eliminating harassment against employees in the workplace." *Comitalo* [*v. Unemployment Comp. Bd. of Rev.*], 737 A.2d [342,] 345 [(Pa. Cmwlth. 1999)].

*Collier Stone Co.*, 876 A.2d at 484 (second and third alterations in original). An exception to reporting exists if the claimant reasonably believes that reporting will be futile. *Serrano*, 149 A.3d at 440; *Martin v. Unemployment Comp. Bd. of Rev.*, 749 A.2d 541, 544 (Pa. Cmwlth. 2000).

Here, Claimant testified as to numerous incidents of alleged sexual harassment and retaliation. However, it is not clear the Board credited all of

9

Claimant's allegations, particularly as they related to alleged retaliation.[9] To the extent the Board found Claimant suffered harassment, the Board found Employer took appropriate steps when it was made aware. (*See, e.g.*, FOF ¶¶ 3, 5.) Significantly, the Board found that the incidents were **remote** in time, occurring six months to two years before Claimant quit. "[W]hen an employee is terminated or quits, the 'factual matrix **at the time of separation** governs' as to whether a claimant is entitled to benefits, and the relevant inquiry in determining the cause of a claimant's unemployment is **confined to the surrounding circumstances existing at the time of the claimant's departure**." *Hussey Copper Ltd. v. Unemployment Comp. Bd. of Rev.*, 718 A.2d 894, 899 (Pa. Cmwlth. 1998) (emphasis added). *See also Lumpkins v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 704 C.D. 2012, filed Nov. 9, 2012), slip op. at 6 (holding allegations of sexual harassment two to five years before resignation cannot be considered as a cause of the claimant quitting).[10] Thus, we cannot conclude the Board erred in finding Claimant did not meet her burden of establishing a necessitous and compelling reason for voluntarily leaving her employment based on allegations of harassment that were **remote in time** to Claimant's actual separation date. With regard to the retaliatory acts Claimant alleged were more recent in time, the Board found there was "no competent testimony" that Claimant suffered retaliation. (Referee's Decision at 3.)

Because Claimant did not establish that, **at the time of her separation**, "circumstances existed that produced real and substantial pressure [for Claimant] to

---

[9] As stated above, while there are no express credibility determinations, the Referee and Board, which incorporated the Referee's findings and conclusions, stated there was "no competent testimony" that Claimant suffered retaliation, which suggests it did not credit Claimant's retaliation claims. (Referee's Decision at 3.)

[10] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

10

terminate [her] employment," *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 228 (Pa. Cmwlth. 2012), the inquiry could end without examining whether Claimant "made a reasonable effort to preserve her employment.'" *Mazur v. Unemployment Comp. Bd. of Rev.*, 193 A.3d 1132, 1136-37 (Pa. Cmwlth. 2018). However, even if Claimant did have a necessitous and compelling reason for quitting **in December 2023**, there is not sufficient evidence that Claimant made a reasonable effort to preserve her employment. Both the Referee and Board found "there was no competent testimony or evidence" that the alleged retaliation was reported. (Referee's Decision at 3.) This is supported by Claimant's testimony as, in many instances to whom she made a report and when is unclear. To the extent Claimant reported the incidents to the EEOC or Health Department, there is no basis for those reports to impute knowledge to Employer. Claimant also asserts it would have been futile as the general manager did not act on former complaints of harassment. While futility does excuse a claimant from having to file a complaint, given the corporate office's prompt actions on other complaints, we cannot conclude that reporting complaints to the corporate office would have been futile under the facts here.

In *Carswell v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 59 C.D. 2013, filed July 11, 2013), a claimant asserted filing a complaint with upper management would have been futile. However, there, we held that the employer had, in response to a previous complaint, conducted an investigation and took action, which stopped the alleged behavior; accordingly, "a reasonable person would conclude that reporting subsequent incidents of harassment would not be futile." *Id.*, slip op. at 6-7. Consequently, we held "that [the c]laimant failed to demonstrate that she took 'common sense action to obviate the problem' and thereby

11

preserve her employment relationship." *Id.*, slip op. at 7 (quoting *Porco v. Unemployment Comp. Bd. of Rev.*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003)). Here, the Board found Employer fired a host, and Claimant testified that a busboy was also fired. (FOF ¶ 3; C.R. at 118.) In addition, a kitchen manager quit before Employer could investigate and take action. (FOF ¶ 6.) Because Employer took swift action once Claimant informed its corporate office of incidents, we cannot say it would have been futile to report any other incidents of harassment.

In sum, based upon the Board's findings, we must affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica Braunstein,                                    :
                              Petitioner               :
                                                       :
            v.                                         :     No. 1786 C.D. 2024
                                                       :
Unemployment Compensation Board                        :
of Review,                                             :
                              Respondent               :

# **O R D E R**

NOW, May 19, 2026, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge